## THE TERRITORY OF HAWAII v. HARRY HART.

### No. 2419.

SUBMITTED JULY 22, 1940.                DECIDED AUGUST 22, 1940.

COKE, C. J., PETERS AND KEMP, JJ.

OPINION OF THE COURT BY KEMP, J.

Harry Hart and Edith Parker were jointly indicted by the grand jury of the first judicial circuit of the Territory of Hawaii for the crimes of abortion and manslaughter arising out of the miscarriage and death of one Misao ·Beppu. The indictments contained four counts: Count I, charging that said defendants committed an abortion on said Misao Beppu, a woman quick with child; count II charged an abortion on said Misao Beppu, a pregnant woman not quick with child; and counts III and IV charged the crime of manslaughter arising out of said abortion and the resulting death of said Misao Beppu.

Motions for separate trials were granted said defendants; the defendant Harry Hart was tried before the Honorable Albert M. Cristy, jury waived, and found guilty of the crime of abortion on a woman quick with child and also of the crime of manslaughter.

This cause is now before this court upon a writ of error sued out by the defendant Harry Hart. The transcribed oral decision of the trial judge follows:

"Mr. Hart, from the evidence in this case there is no dispute whatsoever but what Misao Beppu died as the result of a criminal abortion.

"That being so, the Court does not have to recite any reasons for finding that death was so caused. The evidence is clear and undisputed upon that point; and from the lips of credible witnesses.

"In the two crimes you have been charged with in the various counts, to-wit, manslaughter and abortion, The Court is faced with just one problem. That is whether

there is any reasonable doubt as to you being a participant in the death which occurred as the result of a criminal abortion.

"I have no hesitation in saying at this time that the only doubt the Court could entertain on this evidence is whether you were the principal or merely an accessory. Under the statutes found in Section 5340 and up to Section 5343, dealing with accessories, it is not necessary for the Court to make a finding as to whether you were the wielder of the instrument or an accessory to the extent of merely procuring the job to be done. That either you or Mrs. Parker, or both, were participants, it seems to me, is established beyond a reasonable doubt by this evidence.

"And I come to that conclusion in a very simple way. First, I must state in your presence that the Court is faced with the necessary conclusion of a reasonable person facing this evidence, that neither your testimony nor Mrs. Parker's testimony is credible in all of its features; that both you and Mrs. Parker have been indulging in incriminations and recriminations of a character which under the circumstances of the case tear away from it any rational belief in its consistency.

"The Court, being faced with that feature, and taking into consideration your entire mental collapse from the moment of the occasion on January 14, when you were apprehended at the hotel, is faced with another necessary conclusion, and that is that your conduct belied your words.

"The Court has no hesitation in saying to you there can be a confession by conduct as well as a confession by words. And that confession amounts at least to this: You were either a participant with knowledge of what was going on or were an accessory procuring the eventuality that resulted to this young lady; and were engaged in a dirty business.

"The Court therefore finds you guilty of manslaughter and also finds you guilty of a criminal abortion upon a woman quick with child, and adjudges you guilty of those two offenses in the respective counts."

All assignments of error except those which allege that the evidence was insufficient to sustain a conviction have been abandoned.

The trial court found from the evidence that it was clear and undisputed that Misao Beppu died as the result of a criminal abortion. We shall not here record the evidence upon which the foregoing conclusion was reached. It is sufficient to say that the defendant does not question the correctness of the finding that Miss Beppu died as the result of an abortion but he does attempt an argument to the effect that the evidence fails to establish the allegation that the abortion was not performed for the purpose of saving the life of Miss Beppu. But, as we understand his argument, he finally admits that it was not necessary to prove this allegation for the reason that there is no presumption of good faith or legitimate purpose where a layman performs an abortion. He further admits that the established circumstances indicate the absence of the element of lifesaving and finally that it would be poor policy or strategy on his part to advance a plea in confession and avoidance, a plea that he may have performed the abortion on Miss Beppu but that if he did he was trying to save her life. We agree with the defendant that the established circumstances indicate the absence of the element of lifesaving. It will, therefore, be unnecessary for us to discuss this phase of the case further.

The only question seriously presented by the defendant is the question of the sufficiency of the evidence to connect him with the commission of the crime which he admits the evidence shows was committed by someone. In an effort to create doubt as to his own guilt, he attempts to

cast suspicion upon the physician who moved the deceased from the hotel, where she had resided for the four or five days she had been in Honolulu since leaving her home on Maui, to the hospital where she later died, although counsel stipulated at the trial that such physician never saw her until the night of her removal and defendant admitted to the police that deceased told him, in effect, that the reason she asked him to help her out of her difficulty was that she did not have money enough to procure the services of a physician. He also argues that it would be just as reasonable to conclude from the established circumstances that someone on Maui was the guilty party, although the evidence of several witnesses, including defendant himself, indicates that the deceased was in normal health when she came to Honolulu, and remained so for two or three days thereafter. The defendant testified that the deceased, a total stranger, called him to her hotel shortly after her arrival in Honolulu and told him that she was pregnant and "wanted to get rid of it"; that he informed the deceased that he would get in touch with a person who could help her and that he thereupon made arrangements for his codefendant, Edith Parker, who is, so the defendant claims, a professional abortionist, to call upon the girl. Defendant detailed these facts to the police at the time of his arrest. It is now contended by the defendant that the established facts and circumstances point to Edith Parker, his codefendant, as the guilty party rather than to himself. The court found from the evidence that the defendant either actually participated in performing the abortion which resulted in the death of Miss Beppu or was an accessory to the crime.

"Every person who aids in the commission of an offense, or is accessory before the fact thereto, is guilty of such offense, and shall be subject to indictment, trial and punishment therefor, in the same manner and to the

same effect as if he had been present at the commission thereof and actually taken part therein." R. L. H. 1935, § 5343. "Any person who, not himself being present at the commission of an offense, abets another in the commission thereof, or procures, counsels, incites, commands or hires another to commit the same, which such other thereupon, in pursuance thereof, commits, is an accessory before the fact, to the commission of such offense." R. L. H. 1935, § 5342.

The defendant's admission that, in response to deceased's call upon him for aid, he sent Edith Parker to her, is sufficient to justify the conclusion that he procured or counseled Edith Parker to perform the abortion. The doubt which the court expressed as to whether defendant was a principal or merely an accessory before the fact is therefore immaterial. In other words, the court was not, under the circumstances, bound to determine which of them actually performed the abortion.

There is a mass of evidence tending to show that the defendant either personally performed the abortion or procured or counseled Edith Parker to perform it. In addition to the circumstances already detailed by us, it appears from the evidence that the defendant called on deceased at her hotel on at least two occasions after he arranged for Edith Parker to call upon her. He claims that the last of these visits to the hotel was after she had been removed to Queen's Hospital; that he called upon her at the hospital shortly after her removal, inquired as to her condition, and purchased oranges for her; that when he later visited her in the hospital she told him she had been questioned as to who had performed the abortion; that he asked her if she had mentioned him or Flora and she said "no"; that she was then asked if they wore gloves and she said "yes." The defendant, after stating that sympathy for the girl was the reason for his visits to the

hospital, testified in effect that he was also thinking of himself; that she might involve him; that he had not then been charged by the police but it was a serious thing and he got to thinking and worrying about it because he feared she might implicate him in the matter. The defendant further admitted that in arranging for Edith Parker to call upon Miss Beppu he had in mind that Edith Parker "was both a midwife and she had means of bringing girls around"; that it would be up to Miss Beppu and Edith Parker to decide whether an abortion should be performed; that he knew Miss Parker "was doing these things." It further appears that a day or two prior to the death of Miss Beppu the police had a woman, on the pretext of requiring his services, call the defendant to the same hotel where he saw Miss Beppu; that he came promptly and had with him his crude instruments which he agreed to use; that the woman made an excuse to leave the room, whereupon the police arrested him. Upon being arrested defendant became so excited that he swooned. When he had recovered, he was questioned by the police, his statement taken in shorthand, transcribed and introduced in evidence. Many of the circumstances to which we have referred are from said statement, others are from his evidence at the trial. Some of the statements made to the police are repudiated by defendant in his evidence given at the trial, and he has denied or attempted to explain circumstances testified to by others. It is this conflict in the evidence as to what the circumstances were that defendant principally relies upon in support of his argument that the evidence does not meet the test which must be applied to circumstantial evidence. The general rule applicable where there is a conflict in the evidence as to the existence of any link in the chain of circumstances relied upon to establish defendant's connection with the commission of the crime alleged is that, if there is any

evidence legally sufficient to prove the fact in issue or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction and not such as merely raises a suspicion or conjecture in regard to it, the case should be submitted to the jury.

The foregoing rule was applied in *State* v. *Baker*, 193 S. E. 22 (N. C.). In that case the defendant was charged with having performed a criminal abortion upon one Madell Williams. The evidence of the State tended to show that the death of Madell Williams was the result of peritonitis caused by a criminal abortion which was committed sometime between noon on Sunday and early Monday morning; that she left her home about noon on Sunday with the defendant; that she was then apparently in good health; that when she returned on Monday morning she was in bad physical condition and immediately went to bed; that she remained in bed at home for about a week, when she was removed to a hospital; that the day following her removal to the hospital, at the request of her mother, the defendant visited her in the hospital, talked with her and agreed to pay and did pay her medical and hospital expenses.

The evidence for the defendant tended to show that he did not take deceased from her mother's home on Sunday and that he was not with her any time during said day away from her mother's home. The defendant denied that he had advised or procured the commission of an abortion upon the deceased or that he was responsible for her condition. He admitted that he had visited the deceased frequently prior to her illness and that they were at least friendly. He further admitted that he paid her medical and hospital expenses and that he did so because of his friendship for her and her mother.

The evidence for the State was held to be sufficient to show facts from which the jury could reasonably infer

that the defendant advised and procured the commission of a criminal abortion upon Madell Williams and for that reason was properly submitted, together with the evidence for the defendant to the jury. In support of its holding, the court quoted the rule applicable to such a situation from *State* v. *McLeod*, 152 S. E. 895, 897 (N. C.), as follows:

"The general rule is that, if there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury; otherwise not, for, short of this, the judge should direct a nonsuit or an acquittal in a criminal prosecution. State v. Vinson, 63 N. C. 335. But, if the evidence warrant a reasonable inference of the fact in issue, it is for the jury to say whether they are convinced beyond a reasonable doubt of such fact, the fact of guilt. State v. Blackwelder, 182 N. C. 899, 109 S. E. 644."

In *Territory* v. *Chung Nung*, 21 Haw. 214, 217, a case in which the prosecution relied upon circumstantial evidence to establish the *corpus delicti* as well as to show that the defendant committed the crime, the court said: "It was exclusively within the province of the jury to determine the weight and effect of the evidence, to consider the conflicting theories of guilt and of innocence, and, finally, to determine from all the evidence, direct and circumstantial, including all reasonable and proper inferences to be drawn therefrom, whether the defendant was guilty as charged or not. In reaching its conclusion the jury was at liberty to accept and act upon the evidence consistent with the theory of guilt and to reject the evidence inconsistent therewith, provided that the verdict returned was supported by evidence as to all the essential and material elements of the crime charged." Where, as in

this case, the defendant waives his right to have a jury trial, the decision of the court is tested in this court by the same rules that apply to the verdict of a jury. When so tested we find no difficulty in sustaining the conclusion of the court that the defendant either directly participated in or procured another to perform the abortion which resulted in the death of Miss Beppu. In either case he is guilty as charged. (*Ter.* v. *Peterson*, 23 Haw. 476.)

The judgment of the circuit court is affirmed.

*E. J. Botts* for defendant, plaintiff in error.

*C. E. Cassidy*, Public Prosecutor, and *W. Z. Fairbanks*, Assistant Public Prosecutor, for the Territory.