STATE OF HAWAII, Plaintiff-Appellee, *v.* LLOYD YABUSAKI, Defendant-Appellant

NO. 5894

OCTOBER 26, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

*Per Curiam.* Defendant-appellant, Lloyd Jun Yabusaki (hereinafter appellant or Yabusaki), was found guilty by a jury of the offense of burglary in the first degree.[1] He was, thereafter, sentenced to five years probation, subject to a special condition that he spend six months at the Halawa Jail and subject to a further special condition that he pay a fine of $500.00, payable in installments of $20.00 per month following his release from jail. He appeals from the judgment and sentence of the trial court. The sole question posed by this appeal is whether the trial court properly denied appellant's motions for judgment of acquittal.

Just before 1:00 o'clock in the afternoon, on October 3, 1973, Mrs. Joanne Badeaux, a Kailua resident, was sitting in her dining room when she heard the screeching sound of a tire of an automobile. She thought it signaled the return of her son, but when she went out of the house and looked into her driveway, she saw nothing. As she returned to her dining room, she heard noises coming from the direction of her neighbor's home. Her neighbor, Frank Steinmiller, was not at home at the time. Looking out of her window, she saw a light blue Corvair parked in the Steinmiller's driveway with a lone occupant sitting in the front passenger's seat. Mrs. Badeaux identified the person in the car as appellant Yabusaki.

---

[1] The conviction was obtained under Section 810(1)(c) of the Hawaii Penal Code, Act 9, S.L.H. 1972. Inasmuch as this Code has been incorporated into the Hawaii Revised Statutes, Special Pamphlet 1975, this opinion will refer to the renumbered sections of the HRS. For example, the section under which appellant was convicted will be referred to as HRS § 708-810(1)(c) (Special Pamphlet 1975).

Mrs. Badeaux testified that shortly after she observed the car and its occupant in the Steinmiller's driveway, a male came out of the Steinmiller's home carrying a piece of stereo equipment. He put that into the car and conversed briefly with the passenger in the front seat. At about this time, another male, whom she later identified as Eugene Napolis, ran out of the house carrying television equipment. Mrs. Badeaux, realizing that "[t]hey didn't belong there," took down the number of the license plate of the car in the driveway. After recording this information, she looked up and saw a third male person coming out of the Steinmiller's home, who "was crouching down and ran scuttling down about half way of the car and he jumped in through the back window into the back seat."

The testimony of Mr. Steinmiller, whose home was entered and who was also a state's witness, showed that as these men were preparing to leave, he, Steinmiller, was driving up to his home. Just prior to reaching the entrance to his driveway, he observed a car there with what appeared to be a television set in its back seat. Steinmiller then sensed that something was wrong and drove into the driveway to block its entrance. Immediately, one or two people jumped into the car. They then backed up over a planting area and drove between Steinmiller's car and the carport over the lawn, ricocheted off a shower tree, jumped a curb and sped off. In the meantime, Steinmiller had noted the license plate number of the fleeing car. The police were then notified.

An all points bulletin was issued at about 1:10 p.m. and the car bearing the reported license plate number, with the driver and three occupants, was soon stopped by the police in Kaneohe at about 1:18 p.m. As the police approached the suspects in the car, one of them came out of the car, faced one of two police officers, and inquired "What's wrong, Officer?" He then immediately turned and fled across the nearby parking lot and successfully eluded apprehension. When appellant Yabusaki was arrested, he was sitting between the two front bucket seats of the car holding a stereo console on his lap. Police investigation revealed that entry into the Steinmiller's home was gained by removing the louvers from

a bedroom window.

Appellant Yabusaki was tried together with Eugene Napolis.[2] At the conclusion of the State's case, appellant moved for judgment of acquittal on the basis that the prosecution had failed to prove the offense of burglary in the first degree.[3] The motion was denied.

Both appellant Yabusaki and co-defendant Napolis took the stand in their own defense. Both testified they were asleep during the commission of the crime. Appellant renewed his motion for acquittal at the end of his case. This motion was also denied. The jury found both defendants guilty of burglary in the first degree.

Appellant contends that the trial court erroneously denied his motions for judgment of acquittal because the State had failed to prove that he was an accomplice of the other co-defendants. Appellant argues that the State failed to prove that he had the requisite state of mind to aid or abet the others who had left the automobile in the commission of the alleged crime of burglary in the first degree. In other words, it is claimed by appellant that the prosecution failed to carry the state's burden of proving beyond a reasonable doubt that appellant's conscious object was to promote or facilitate the planning or commission of the burglary. There is no challenge to the state's proof of the prima facie case except in reference to the state of mind required to establish that offense.

---

[2] The indictment returned by the grand jury charged three individuals, Wilfred Walter Kapua Freitas, Eugene Lawrence Napolis, and Lloyd Jun Yabusaki, with the commission of the offense of burglary in the first degree. Just prior to the trial on this indictment, the prosecutor, with the approval of the court, entered a nolle prosequi as to co-defendant Wilfred Walter Kapua Freitas.

[3] Hawaii Rules of Criminal Procedure, superseded by Hawaii Rules of Penal Procedure as of January 1, 1977, in Rule 29(a) provided:

(a) *Motion for Judgment of Acquittal*. Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the government is not granted, the defendant may offer evidence without having reserved the right.

The Hawaii Penal Code makes a person criminally responsible for the conduct of another person when the former is an accomplice of such other person in the commission of the offense. HRS § 702-221 (Special Pamphlet 1975). The Code states further that a person is an accomplice of another person in the commission of an offense if, with the intention of promoting or facilitating the commission of the offense, he "aids or agrees or attempts to aid the other person in planning or committing it." HRS § 702-222 (Special Pamphlet 1975). Appellant is correct in his contention that these sections require the state to prove beyond a reasonable doubt that appellant's intention was to promote or facilitate the commission of the offense.

Appellant asserts that all the state has shown is that he was present at the scene of the crime, and nothing more; that mere presence at the scene of the crime is insufficient to establish his intent. We agree with appellant that mere presence would not be sufficient to implicate him with this offense. However, the record in this case which reveals the state's case, as detailed previously, discloses that appellant was sitting in the front seat of the Corvair waiting for the return of the three active participants who had gone into Frank Steinmiller's house for the purpose of committing the alleged burglary; that the active participants returned to the car one at a time with the fruits of their alleged burglary; that when the first participant came out from the house he walked towards the car and placed the stolen article in the car; that before the second participant returned to the car, the first participant walked to the driver's side and conversed with appellant which would indicate that appellant was awake and not asleep; that when the last participant hurriedly returned, they, together with appellant, fled the scene of the crime; and that very shortly thereafter, the suspected vehicle with appellant and his companions was stopped by the police. Considering all of the circumstances surrounding this case, we believe that the state had marshalled sufficient evidence to have enabled the jury to conclude beyond a reasonable doubt that appellant was present at the scene of the crime with the conscious object of promoting or facilitating the commission

of burglary. *State v. Carvelo*, 45 Haw. 16, 361 P.2d 45 (1961); *cf. State v. Cummings*, 49 Haw. 522, 423 P.2d 438 (1967); *Territory v. Ebarra*, 39 Haw. 488 (1952); *The King v. I*, 3 Haw. 237 (1870).

Under these circumstances, it would be highly unlikely that appellant was unaware of the impending burglary and that through circumstances beyond his control he happened to be innocently present at the scene of its commission. Appellant's intent to promote and facilitate the commission of burglary palpably appears on this record from all of the circumstances as testified by the prosecution witnesses. It is an elementary principle of law that intent may be proved by circumstantial evidence; that the element of intent can rarely be shown by direct evidence; and it may be shown by reasonable inference arising from the circumstances surrounding the act. *State v. Laurie*, 56 Haw. 664, 548 P.2d 271 (1976); *State v. Stuart*, 51 Haw 656, 466 P.2d 444 (1970); *State v. Hale*, 45 Haw. 269, 277, 367 P.2d 81, 86 (1961); *Territory v. Hart*, 35 Haw. 582 (1940); *Territory v. Palai*, 23 Haw. 133 (1916); *The King v. I, supra. See also State v. Sloan*, 548 S.W.2d 633 (Mo. App. 1977); *State v. Bishop*, 317 Mo. 477, 296 S.W. 147 (1927). The mind of an alleged offender may be read from his acts, conduct, and inferences fairly drawn from all the circumstances.

Moreover, one of the police officers, Officer Stephen Magnani, who stopped the vehicle in which appellant and his companions were riding some fifteen minutes after the alleged crime, testified that appellant had on his lap a stereo component, later identified as Mr. Steinmiller's. Such testimony, referring to appellant's possession of stolen property shortly after the commission of a burglary, together with the other circumstances of this case, further bolsters our conclusion that a jury could have reasonably believed that appellant was an accomplice. *State v. Carvelo, supra.*

The appellant makes much of the argument that he was asleep even before they arrived at the Steinmiller's driveway. He testified in his own defense that before they went to Kailua, they purchased some beer at a local grocery store in Moiliili. He further testified that he drank more than one

bottle of beer on the way to Kailua; that he started to suffer from a headache because he "was drinking"; and that he fell asleep.

From such defense testimony, appellant fashions a contention made in *Carvelo*, 45 Haw. at 24, 361 P.2d at 50: "The constant refrain in argument and brief has been that the defendant can not be held criminally responsible in this case because he was asleep or passed out when the 'crime charged' was planned and committed." However, in this case Officer Magnani testified:

Q That you stopped the defendants.

A I stopped them at about 1320 hours. That's 1:20 p.m.

\*　\*　\*　\*　\*

Q And after stopping the suspect's vehicle, what was defendant Lloyd Yabusaki and defendant Eugene Napolis' general appearance and condition at that time?

A They appeared to be normal.

Q Coherent? They understood what you folks were asking them?

A I didn't ask them anything.

Q What about — did they seem like they knew what they were going [doing]?

A Yes, sir.

Further, the testimony by Mrs. Badeaux, who appeared as a prosecution witness, contradicted appellant's testimony that he was asleep in the vehicle until he was awakened when a stereo was shoved on his lap. Mrs. Badeaux's testimony, if believed by the jury, would demonstrate that appellant had talked to one of the participants before the stereo was even placed on appellant's lap. Appellant himself admitted that he had in fact conversed with the driver of the vehicle as testified by Mrs. Badeaux.

Whether the appellant had any intoxicating beverage while travelling to Kailua, and whether he fell asleep enroute are factual questions to be determined by the jury based upon all of the evidence. *Carvelo, supra*. We conclude that the jury by finding the appellant guilty chose not to believe the

appellant's testimony that he fell asleep on the way to Kailua and was awakened when the stereo was shoved on his lap. *Territory v. Hart, supra*. Moreover, the photographic exhibits offered in evidence portraying the interior of the vehicle driven to commit the alleged offense do not depict any evidence of any empty beer bottles or cans.

We stated in *State v. Laurie*, 56 Haw. 664, at 669, 548 P.2d 271, at 275-76 (1976), that:

> It is well settled that to deny a motion to acquit there must be sufficient evidence to support a prima facie case; the evidence must enable a reasonable mind fairly to conclude guilt beyond a reasonable doubt, giving full play to the right of the fact finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact. *State v. Cannon*, 56 Haw. 161, 163, 532 P.2d 391, 394 (1975); *State v. Rocker*, 52 Haw. 336, 345-46, 475 P.2d 684, 690 (1970). This test applies to both direct testimony and circumstantial evidence. *State v. Cannon, supra*.

To the same effect are *State v. Kekaualua*, 50 Haw. 130, 433 P.2d 131 (1967); *State v. Iaukea*, 56 Haw. 343, 537 P.2d 724 (1975); *State v. Benton*, 56 Haw. 409, 538 P.2d 1206 (1975).

From our analysis of the record in the instant case, we are satisfied that the evidence at the close of the prosecution's case is sufficient to support a prima facie case; and that the totality of the evidence would enable a reasonable mind fairly to conclude guilt beyond a reasonable doubt, giving full play to the right of the fact finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact.

The motions for judgment of acquittal were properly denied, and we affirm the judgment and sentence.

*Marie N. Milks*, Deputy Public Defender, for defendant-appellant.

*Earle A. Partington*, Deputy Prosecuting Attorney (on the brief) for plaintiff-appellee.