STATE OF HAWAII, Plaintiff-Appellee, *v.* DAVID HINA BRIGHTER, LAWRENCE RICHARD KAMAHA COLOMA, also known as Lawrence Richard Coloma, and WALLACE ISAMU SHIMABUKURO, also known as Wallace I. Shimabukuro, Defendants-Appellants

NO. 6054

MARCH 21, 1980

RICHARDSON, C.J., OGATA, MENOR, JJ.,
AND RETIRED JUSTICE MARUMOTO IN PLACE
OF KOBAYASHI, J., EXCUSED*

———————
*Justice Kidwell, who heard oral argument in this case, retired from the court on February 28, 1979. HRS § 602-10 (1978 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

*Per Curiam.* This is a consolidated appeal by the defendants, David Hina Brighter, Wallace I. Shimabukuro, and Lawrence Richard Kahama Coloma who were convicted and sentenced for the offense of robbery in the first degree after a consolidated trial before a jury.

The victim of the robbery in this case was one Loretta Krause. She lived at 4707 Matsonia Drive. The building at that location consisted of two separate and distinct living units. Mrs. Krause, a high school principal and the owner of the dwelling, lived upstairs and rented the apartment below to one Mark Wilson. On June 28, 1976, at approximately 11:00 p.m., Mrs. Krause was watching a television program with one Andrew Tibone, a student houseguest from Micronesia, when the defendants, armed with weapons and wearing stocking masks and gloves, burst into her apartment through the kitchen entrance. Mrs. Krause testified at trial:

> I heard a noise and I turned to [Andrew] and I said, "Someone is at the back door." At which I got up and went to the back door.
>
> And I put my hand on the knob to look out because I had the kitchen light on, and with the light on in the house, I couldn't see what was going on outside. But I did see a hand on the doorknob and a white glove and a black

sleeve. And I began to say something like, "What do you want?"

And at that time, the door flew open and somebody grabbed me by the hair and we went down on the kitchen floor, at which time I started to scream rather loudly, which brought Andrew in from the next room, which is not too far away. And I saw him at the doorway. And then two other people rushed into the kitchen.

The intruders asked her where "Mark Wilson" lived and she told them he lived downstairs. Defendant Coloma at this point noticed Mark Wilson, who had heard the commotion and had gone upstairs to investigate, crouching outside the kitchen door. He went out and grabbed Mr. Wilson and at the point of a gun forced him back down to his apartment. Defendants Brighter and Shimabukuro remained upstairs with Mrs. Krause and Andrew. With gun in hand and with Shimabukuro brandishing a knife, Brighter ordered the victims to lie face down on the living room floor. He then obtained a bedspread from the bedroom and covered them with it. Thereafter, he asked Mrs. Krause where she kept her jewelry, and pointing his gun at her told her that she would not get hurt if she told him where her purse and jewelry were. Fearful for her safety, she told him that she kept her jewelry in the bathroom and that her purse was behind the black chair in the living room.

Coloma meanwhile herded Mark Wilson and his four houseguests into Wilson's bedroom, ripped the telephone off the wall, forced them to lie face down, tied their hands, and covered them with a bed quilt. Telling them not to get excited, Coloma said he was just looking for "Mark Wilson," and asked which of them was "Mark Wilson." Wilson answered that he was. After warning the others to remain where they were, Coloma took Wilson back upstairs to Brighter. Upon informing Brighter that the man he had with him was "Mark Wilson," Coloma disappeared back into the kitchen area. After he left, Brighter and Shimabukuro grilled Wilson about an alleged theft of their property. Wilson denied their accusations and convinced them he was not the "Mark Wilson" to whom they referred. Presumably satisfied that they had the wrong man, they ordered him to lie face down on the floor

beside Mrs. Krause and Andrew. While Shimabukuro stood guard over the hapless trio, Brighter went through Mrs. Krause's rooms and belongings.

Because of the alertness of next door neighbors, the police meanwhile had been notified and they arrived on the premises at approximately 11:50 p.m. Coloma was arrested in Wilson's apartment, Shimabukuro in Krause's living room, and Brighter in Krause's bathroom.

A survey of the premises after the defendants were placed under arrest revealed that the dresser drawers in the bathroom had been ransacked. Mrs. Krause found them empty and except for a couple of pieces on the bathroom floor, the rest of her jewelry was no longer where she had kept it in the bathroom. Going to the other rooms, she discovered that her purse was no longer where she had earlier left it. Instead she found the purse with its contents, including her wallet, lying in disarray on the floor at the doorway leading to her den. Her wallet was empty and the two or three $20.00 bills she had in it were gone. Continuing to survey the premises, she found her missing jewelry on the bedroom floor, wrapped in one of her red towels. None of the officers who testified at trial could recall whether or not the defendant was asked to empty his pockets following his arrest. Mrs. Krause, however, testified that he was so ordered. In this respect her testimony was corroborated by defendant Brighter who was the only one of the defendants to take the stand. Brighter, however, denied that any of the money which he removed from one of his pockets and displayed to the police belonged to Mrs. Krause.

I.

The defendants have taken the position that the trial court prejudicially erred in refusing to instruct the jury as follows:

It is a defense to a prosecution for theft that the defendant believed that he was entitled to the property under a claim of right or that he was authorized, by the owner or by law, to obtain or exert control as he did.

Concomitantly, they argue that the trial court should not have instructed the jury, *inter alia,* as follows:

[R]obbery is committed by a defendant even where the property he takes or attempts to take is, or is believed by him to be, his own, so long as force, or threat of force, as previously stated is used.

At trial, Brighter testified that their intent in going to 4707 Matsonia Drive was to recover property, allegedly belonging to Brighter and Shimabukuro, from a Mark Wilson whom they believed to be residing at that address. Brighter claimed that the said Mark Wilson had stolen turquoise jewelry belonging to him, as well as marijuana jointly owned by him and Shimabukuro. He further testified that all Coloma knew about the trip to 4707 Matsonia Drive was that they were going there to recover their property from a Mark Wilson and that Coloma went along simply for the purpose of assisting them in making the recovery. Brighter was the only one of the defendants to testify.

In support of their contentions, the defendants rely upon the rule followed by some jurisdictions, *see, e.g., Richardson v. United States,* 403 F.2d 574 (D.C.Cir. 1968); *People v. Butler,* 55 Cal.Rptr. 511, 421 P.2d 703 (1967); *State v. Hardin,* 99 Ariz. 56, 406 P.2d 406 (1965); *People v. Gallegos,* 130 Colo. 232, 274 P.2d 608 (1954), that where a defendant believes in good faith that he is entitled to the property taken, the requisite animus furandi or intent to steal is lacking, and he may not therefore be convicted of theft or robbery.[1] The defendants also rely upon HRS § 708-834, which provides, in pertinent part, as follows:

(1) It is a defense to a prosecution for theft that the defendant:

(b) Believed that he was entitled to the property . . . under a claim of right or that he was authorized,

---

[1] 2 Wharton's Criminal Law and Procedure § 565, at 274 (Anderson Ed., 1957) explains the rule, upon which the defendants rely, as follows:

If the defendant had the right to possession of the property at the time when he took it from his victim, he is not guilty of robbery even though he used force to obtain the possession. To illustrate, a person who by force recovers his stolen property from the thief who took it is not guilty of robbery.

by the owner or by law, to obtain or exert control as he did.

It has been said of the defense, however, as it applies to robbery, that "not only is [it] lacking in sound reason and logic, but it is utterly incompatible with and has no place in an ordered and orderly society such as ours, which eschews self-help through violence." *State v. Ortiz,* 124 N.J.Super. 189, 192, 305 A.2d 800, 802 (1973); *see also State v. Martin,* 516 P.2d 753 (Ore.App. 1973). The trial court in the case before us was of the same opinion and on that basis denied the instruction requested and instructed the jury as it did. Were it not for the provisions of HRS § 708-834(1)(b), we would be constrained to agree with the trial court that while a bonafide claim of right may be a defense to theft, it is not a defense to robbery. Robbery, however, is merely an aggravated form of theft. *People v. Butler, supra.* And where, on the facts, an accused may not be convicted of theft, a fortiori he may not be convicted of robbery.

It is vital to the defense, however, that the interest which the accused asserts under a claim of right must be to *specific property,* HRS § 708-834(1)(b); *State v. Martin, supra,* and the interest claimed by him must be in complete derogation of the victim's rights in and to the property which is the subject of the alleged robbery, HRS § 708-834(5).[2] Here, it is undisputed that the property taken belonged to the victim, Mrs. Krause. The defendants had no claim of right whatsoever to the money taken from her wallet or to the jewelry which was removed from her bathroom. And while Brighter denied taking any money belonging to Mrs. Krause, a factual question which was for the jury to resolve, he did admit at trial that none of the jewelry he found in the apartment belonged to any of the defendants. Furthermore, it was allegedly one Mark Wilson who had committed the theft of the defendants' property, and it was from him that the property was purportedly to be recovered. In no way, obviously, can the defendants now

---

[2] HRS § 708-834(5) provides that "[i]n a prosecution for theft, it is not a defense that the defendant has an interest in the property [taken] if the owner [also] has an interest *to which the defendant is not entitled.*" (Emphasis added)

reasonably argue that they had a bonafide claim of right to any of the property taken from Mrs. Krause. That being the case, the defendants' requested instruction that a bonafide claim of right was a defense to theft was properly refused as there was no evidence upon which such an instruction could have been predicated. Under these circumstances, also, the trial court's instruction to the jury that a bonafide claim of right was not a defense to robbery was at best harmless error. H.R.P.P. Rule 52(a).

## II.

The defendants have also asserted on appeal, however, that the trial court erred in denying their motions for judgment of acquittal.

The standard to be applied by the trial court in ruling upon a motion for judgment of acquittal is whether, upon the evidence viewed in the light most favorable to the government, and giving full play to the right of the jury to determine credibility, weigh the evidence, and draw therefrom justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. *State v. Murphy,* 59 Haw. 1, 575 P.2d 448 (1978); *State v. Yabusaki,* 58 Haw. 404, 570 P.2d 844 (1977); *State v. Rocker,* 52 Haw. 336, 475 P.2d 684 (1970).

It is clear from the record that defendants Brighter and Shimabukuro may not now seriously complain of the trial court's denial of their motion. While Shimabukuro was standing guard over their captives, Brighter was going through Mrs. Krause's personal belongings. There was ample evidence from which a reasonable mind might have fairly concluded guilt beyond a reasonable doubt. Coloma's claim, however, requires a more extended discussion.

Coloma was charged with aiding and abetting Brighter in the robbery of Mrs. Krause. The statute under which he was indicted provides that "[a] person is an accomplice of another person in the commission of an offense if . . . [w]ith the intention of promoting or facilitating the commission of the

offense, he . . . [a]ids or agrees or attempts to aid the other person in planning or committing it." HRS § 702-222.

The record plainly shows that Coloma willingly and actively participated in the assault upon Mrs. Krause, and this placed Mrs. Krause in a position where she was extremely vulnerable to the will of the defendants. The thrust of Coloma's argument, however, is that he did not have the requisite intent to aid and assist in the robbery of Mrs. Krause. He relies upon the basic proposition that in order to be adjudged guilty as an accomplice, it must be shown that he, directly or indirectly, aided the perpetrator (Brighter), with knowledge of the latter's wrongful purpose. *State v. Yabusaki, supra.*

Brighter testified that their original intent in going to the Matsonia Drive address was to recover property he claimed had been stolen from them by a Mark Wilson and that Coloma was merely going along with them to assist in the recovery. He further testified:

Q. So Mr. Coloma was not present upstairs during the time that you were involved with the jewelry or the purse of Mrs. Krause, isn't that right?

A. That's correct.

Q. He was not upstairs?

A. No.

It was for the jury, however, to assess the credibility of the witnesses, weigh the evidence, and draw reasonable inferences of fact from the evidence. The jury was not bound to accept as true Brighter's testimony regarding their original intent. Neither was it required to give full credence to, and to view in isolation, that part of his testimony that might have been favorable to Coloma. *State v. Yabusaki, supra; State v. Carvelo,* 45 Haw. 16, 361 P.2d 45 (1961). Moreover, guilty knowledge and felonious intent may be inferred from the defendant's own conduct, as well as from the other circumstances surrounding the commission of the offense. *Id.* The defendants did not go to Matsonia Drive for an innocent and peaceful purpose. Masked, armed, and wearing gloves they burst in upon Mrs. Krause and her houseguest unannounced, and proceeded to subdue and to threaten them. The robbery

of Mrs. Krause eventually ensued. And while Coloma was not physically present in that part of the Krause apartment where the robbery occurred, the evidence being that he was last seen going back through the kitchen area of the apartment after bringing Mark Wilson to Brighter, the jury could have reasonably found that it was his assigned responsibility to maintain an external watch to protect his confederates, and to make certain that the occupants of the downstairs apartment would not be in a position to raise an alarm. The evidence reveals that he was ruthlessly efficient in this latter regard. At the point of a gun, he forced Wilson's houseguests into the bedroom, ripped the phone off the wall, forced them to lie face down on the floor, tied their hands, covered them with a quilt, and told them not to make a sound. They were completely immobilized from seeking outside assistance, either for themselves or for the captives upstairs.

The evidence when thus viewed in the light most favorable to the State presented a jury question regarding Coloma's complicity in the robbery of Mrs. Krause. And where there is sufficient evidence to establish a prima facie case against the defendant, the trial court's denial of his motion for judgment of acquittal will be upheld. *State v. Laurie*, 56 Haw. 664, 548 P.2d 271 (1976); *State v. Cannon*, 56 Haw. 161, 532 P.2d 391 (1975).

Affirmed.

*Arnold T. Abe* for defendant-appellant Shimabukuro.

*Lloyd Van de Car*, Deputy Public Defender for defendant-appellant Coloma.

*Erick T. S. Moon* for defendant-appellant Brighter.

*Kendall C. S. Wong*, Deputy Prosecuting Attorney for plaintiff-appellee.