**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000732
28-MAR-2024
08:29 AM
Dkt. 60 SO**

NO. CAAP-22-0000732

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
EDDIESON REYES, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CPC-21-0000721)

SUMMARY DISPOSITION ORDER
(By: Hiraoka, Presiding Judge, Wadsworth and Nakasone, JJ.)

Defendant-Appellant Eddieson Reyes (**Reyes**) appeals from the November 16, 2022 Judgment of Conviction and Sentence (**Judgment**), entered by the Circuit Court of the First Circuit (**Circuit Court**).[1] Following a jury-waived trial on the charges of second-degree murder, first-degree terroristic threatening, and firearm-related offenses, Reyes was found guilty as charged,

_____

[1] The Honorable Fa'auuga L. To'oto'o presided.

and was sentenced to a life term of imprisonment without the possibility of parole.[2]

On appeal, Reyes contends that the Circuit Court erred by: (1) denying Reyes's Motion to Dismiss the Indictment, where the Plaintiff-Appellee State of Hawaiʻi (**State**) "failed to present sufficient evidence to establish probable cause and intentionally omitted clearly exculpatory evidence by withholding the results of the gunshot residue [(**GSR**)] test from the grand jury"; (2) denying Reyes's Motion to Suppress, where it "failed to consider and evaluate the required *Kaneaiakala* factors in holding that [an eyewitness]'s identification of [Reyes] was 'reliable enough' to be admitted at trial"; and (3) denying Reyes's Renewed Motion for Judgment of Acquittal (**MJOA**), where "the State failed to exclude every reasonable inference of [Reyes]'s innocence, and thus failed as a matter of law to discharge its burden of presenting substantial evidence to support [Reyes]'s guilt beyond a reasonable doubt."[3]

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, we resolve Reyes's points of error as follows, and affirm.

> **The Circuit Court did not err by denying the Motion to Dismiss the Indictment.**

Reyes argues that the State "failed to establish probable cause" because his arrest was based on two things: (1) eyewitness Leon Pacatan's (**Pacatan**) identification, which did not provide probable cause because it was "corrupted and unreliable"; and (2) the fact that Reyes was the "registered

---

[2]     The underlying case involved a road rage incident, where Triston Billimon (**Decedent**) was shot and killed by another driver on the Likelike Highway off-ramp in Kalihi.

[3]     Reyes's points of error have been reordered for clarity.

owner of the Acura" also did not provide probable cause because Reyes had reported "his vehicle was stolen ten minutes prior to the shooting" and "it was highly likely [Reyes] did not discharge a firearm."  The State argues that probable cause was established, where Pacatan positively identified Reyes as the suspect shooter.

"[I]n cases involving sufficiency of the evidence to support an indictment, this court . . . appl[ies] a de novo standard."  State v. Taylor, 126 Hawaiʻi 205, 214, 269 P.3d 740, 749 (2011) (citations omitted).

> In reviewing the sufficiency of the evidence to establish probable cause before the grand jury, every legitimate inference that may be drawn from the evidence must be drawn in favor of the indictment and neither the trial court nor the appellate court on review may substitute its judgment as to the weight of the evidence for that of the Grand Jury. The evidence to support an indictment need not be sufficient to support a conviction.

Id. at 215, 269 P.3d at 750 (quoting State v. Ganal, 81 Hawaiʻi 358, 367, 917 P.2d 370, 379 (1996)).  "A grand jury indictment must be based on probable cause.  'Probable cause' has been defined as a state of facts as would lead a person of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused."  Id. at 218, 269 P.3d at 753 (cleaned up).  To support an indictment, "the prosecution must provide evidence of each essential element of the charged offense to the grand jury."  Id. (citation omitted).

Here, the evidence presented to the grand jury sufficiently established probable cause for the charges in the Indictment.  Pacatan gave eyewitness testimony about seeing an Acura and a BMW speeding on the freeway on June 18, 2021, at 11:00 p.m.; and he testified that when the vehicles were stopped, the driver of the Acura got out, went to the driver's side window of the BMW, and shot through the window.  Pacatan

NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

gave a description to the police of the suspect shooter, the license plate of the shooter's vehicle, and later identified Reyes to the police as the shooter. A second witness testified to hearing a gunshot after he passed by two stopped vehicles at the scene, and provided "a partial of the license plate number" of the vehicle that sped away. Decedent's wife and BMW passenger, Jannine Billimon (**Jannine**) testified to a confrontation between the vehicles on June 18, 2021 at 11:00 p.m. while Decedent was attempting to pass; she saw the Acura driver point a gun at her; the Acura driver moved his vehicle in a manner to force their BMW to take the off-ramp and end up hitting the Acura; Jannine hid under the BMW dashboard and heard a gunshot; Jannine then saw a hole in the BMW, and Decedent was bleeding. The medical examiner testified that Decedent died of a gunshot wound to the chest. Police officer witnesses testified to their pursuit of a suspect matching the description in the area of the scene; that Reyes reported his vehicle stolen at 11:16 p.m.; that the vehicle Reyes reported as stolen matched the description and license plate of the suspect shooter's vehicle; that Reyes looked like he had "just gotten out of the shower" when he went to the Kalihi Police Station to report the stolen vehicle; and that Pacatan identified Reyes at the Kalihi Police Station as the suspect but with a different shirt on.

The evidence above established "probable cause," as it "would lead a person of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of" Reyes for the offenses he was charged with. See Taylor, 126 Hawaiʻi at 218, 269 P.3d at 753 (cleaned up). Reyes's arguments on appeal go to the weight of the evidence, which may be at issue at trial, but are inappropriate for review of evidentiary sufficiency for a probable cause determination. See id. at 215, 269 P.3d at 750 ("[E]very legitimate inference that may be drawn

4

from the evidence must be drawn in favor of the indictment and <u>neither the trial court nor the appellate court on review may substitute its judgment as to the weight of the evidence for that of the Grand Jury</u>." (emphases added) (citation omitted)). The Circuit Court did not err in denying the motion to dismiss the Indictment based on insufficient evidence. See id. at 214-15, 269 P.3d at 749-50.

Reyes's second argument for dismissal of the Indictment is that the State "intentionally omitted the results of the [GSR] test before the grand jury—clearly exculpatory evidence which the prosecution was obligated to present." This argument lacks merit.

"Where evidence of a clearly exculpatory nature is known to the prosecution, such evidence must be presented to the grand jury." State v. Pitts, 146 Hawaiʻi 120, 138, 456 P.3d 484, 502 (2019) (brackets omitted) (quoting State v. Bell, 60 Haw. 241, 245, 589 P.2d 517, 520 (1978)). "In cases involving allegations of prosecutorial abuse or misconduct, this court has applied an abuse of discretion standard when reviewing a motion to dismiss an indictment." Taylor, 126 Hawaiʻi at 214, 269 P.3d at 749 (citation omitted). "Dismissal of an indictment is required only in flagrant cases in which the grand jury has been overreached or deceived in some significant way." State v. Borge, 152 Hawaiʻi 458, 464, 526 P.3d 435, 441 (2023) (cleaned up).

Here, the State presented evidence at the hearing on the Motion to Dismiss that the lack of GSR was not "clearly exculpatory" evidence that the State was required to present to the grand jury. See Pitts, 146 Hawaiʻi at 138, 456 P.3d at 502 (citation omitted). Expert Kenton Wong testified that the lack of GSR could have been caused by a person washing their hands or

5

GSR falling off.  Expert Kaleo Kaluhiokalani also testified that the lack of GSR can be from wearing gloves, a person washing their hands, or that GSR was not collected or detected due to too little GSR being deposited or other foreign materials covering the GSR.  Thus, the fact that there was no GSR on Reyes's hands did not conclusively establish that Reyes was not the suspect shooter, and the negative GSR test result was not "clearly exculpatory[.]"  See id. (emphasis added) (citation omitted).  The Circuit Court did not abuse its discretion when it found and concluded that the GSR result did not "constitute [] clearly exculpatory evidence and therefore it was within [the] prosecution['s] discretion whether to bring it in at the grand jury."  See Taylor, 126 Hawaiʻi at 214, 269 P.3d at 749; Borge, 152 Hawaiʻi at 464, 526 P.3d at 441.  Thus, the Circuit Court did not err when it denied the Motion to Dismiss the Indictment on this basis.

> **The Circuit Court did not err when it denied the Motion to Suppress.**

Reyes argues that the Circuit Court erred in admitting Pactan's identification of Reyes because the field show-up was "unnecessarily suggestive and conducive to irreparable mistaken identification."  Reyes argues that the Circuit Court abused its discretion when it found that Pacatan's identification "was 'reliable enough' under the totality of the circumstances without even considering all of the relevant factors it was obligated to consider under *Kaneaiakala*."  Reyes does not specifically challenge any of the Circuit Court's findings in its suppression order, and appears to challenge the Circuit Court's oral ruling at the suppression hearing.  Thus, the Circuit Court's FOFs are binding, and support its conclusion that Pacatan's identification was reliable.  See State v.

Rodrigues, 145 Hawaiʻi 487, 497, 454 P.3d 428, 438 (2019) ("[U]nchallenged findings of fact are binding upon appellate courts." (citations omitted)).

In reviewing whether an eyewitness identification should be suppressed, "questions of suggestiveness and reliability are questions of law that are freely reviewable on appeal." State v. Kaneaiakala, 145 Hawaiʻi 231, 240, 450 P.3d 761, 770 (2019) (citation omitted). The supreme court in Kaneaiakala recognized that show-up identifications are inherently suggestive, and prospectively held that trial courts must "consider any relevant factors" set forth in Hawaiʻi Standard Jury Instruction Criminal (**HAWJIC**) 3.19.[4] 145 Hawaiʻi at 242-43, 247, 450 P.3d at 772-73, 777. Trial courts must also consider the "effect of suggestiveness on the reliability of the identification . . . ." Id. at 248, 450 P.3d at 778. "The identification must be suppressed only if the impermissibly suggestive procedure used created a very substantial likelihood of misidentification." Id. at 241, 450 P.3d at 771 (citation omitted).

---

[4] The thirteen HAWJIC 3.19 factors include: (1) the opportunity of the witness to observe the person involved in the alleged criminal act, (2) the stress, if any, to which the witness was subject at the time of the observation, (3) the witness's ability, following the observation, to provide a description of the person, (4) the extent to which the defendant fits or does not fit the description of the person previously given by the witness, (5) the cross-racial or ethnic nature of the identification, (6) the witness's capacity to make an identification, (7) evidence relating to the witness's ability to identify other participants in the alleged criminal act, (8) whether the witness was able to identify the person in a photographic or physical lineup, (9) the period of time between the alleged criminal act and the witness's identification, (10) whether the witness had prior contacts with the person, (11) the extent to which the witness is either certain or uncertain of the identification and whether the witness's assertions concerning certainty or uncertainty are well-founded, (12) whether the witness's identification is in fact the product of his/her own recollection, and (13) any other evidence relating to the witness's ability to make an identification.

Here, the Circuit Court considered the factors that it deemed relevant from HAWJIC 3.19 and determined that Pacatan's identification was reliable.[5] While the Circuit Court found that the field show-up was suggestive under "the totality of the circumstances" of Pacatan's identification and the Kaneaiakala factors, the Circuit Court concluded that Pacatan's identification was nevertheless "reliable" and admissible. FOFs 42-43. The unchallenged FOFs reflect that the Circuit Court found that the circumstances of the suggestive field show-up did not influence Pacatan to make an identification of Reyes; that Pacatan's identification remained consistent; and that the identification was based on Pacatan's own recollection. The

---

[5] The Circuit Court made the following unchallenged findings:

- Factor 1: Pacatan had "ample opportunity" to view Reyes with a "high degree of attention" at a distance of "less than one and a half car length[s]" for "at least 15 or 20 seconds" "under brightly lit street lamps." Pacatan's view was "unobstructed." FOFs 10, 13-15 17-18, 20.
- Factor 2: Pacatan was "not under stress" when he observed Reyes, and that "only after some seconds of keen observation" of Reyes's face and appearance, did Pacatan realize someone got shot and his stress levels rose. FOFs 21-23.
- Factor 3: Pacatan gave a "detailed and accurate description" of Reyes "approximately 20 minutes after the shooting." FOFs 24-25.
- Factor 4: Reyes fit the "description of a person previously given by Pacatan prior to the field show up." FOFs 26-27.
- Factor 5: Pacatan identified the suspect as a "Micronesian male," and Reyes was described as a "Filipino male." FOFs 25, 27.
- Factor 6: Pacatan had the "capacity to make an identification," where he "was not impaired in any way by alcohol or drugs[,]" "not affected by any stress," "d[id] not have any visual or auditory disability," and "wore glasses for reading." FOFs 29-30.
- Factor 8: Pacatan "was able to identify" Reyes from a field show-up. FOF 31.
- Factor 9: Pacatan identified Reyes at 1:51am on June 19, 2021 from a field show-up, "two hours and 36 minutes" after the time of the criminal act. FOFs 33-36.
- Factor 10: Pacatan "did not have prior contacts" with Reyes. FOF 37.
- Factor 11: Pacatan was certain of his identification, where he immediately identified Reyes as the suspect with different clothes on. FOFs 32, 38-40.
- Factor 12: Pacatan's identification of Reyes was from his own recollection, where he observed Reyes commit the criminal act in front of him. FOFs 32, 39.

8

record also reflects that Pacatan testified that he did not overhear anything about the possible suspect and was not prompted to identify Reyes. We conclude Reyes's challenge to the denial of the Motion to Suppress is without merit. See Kaneaiakala, 145 Hawaiʻi at 240, 450 P.3d at 770.

**The Circuit Court did not err by denying the Renewed MJOA.**

Reyes argues that although a single eyewitness identification can support a conviction, "Pacatan's testimony was directly contradicted by [Marie Botelho (**Botelho**)], the only other eyewitness to the shooting." Reyes argues that Pacatan's testimony was also conflicting with his previous testimony, and that Pacatan's description of the suspect did not match Reyes. According to Reyes, because Pacatan's testimony was unreliable, "the remaining evidence at trial left wide open the reasonable inference that [Reyes] was not the shooter."

We employ the same standard that a trial court applies when reviewing a motion for judgment of acquittal, namely, "whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, the evidence is sufficient to support a prima facie case so that a reasonable mind might fairly conclude guilt beyond a reasonable doubt." State v. Angei, 152 Hawaiʻi 484, 492, 526 P.3d 461, 469 (2023) (quoting State v. Jhun, 83 Hawaiʻi 472, 481, 927 P.2d 1355, 1364 (1996)).

Here, the main dispute was on identification. "The testimony of one percipient witness can provide sufficient evidence to support a conviction." State v. Pulse, 83 Hawaiʻi 229, 244, 925 P.d 797, 812 (1996) (citing State v. Eastman, 81 Hawaiʻi 131, 141, 913 P.2d 57, 67 (1996)). Appellate courts "give 'full play to the right of the fact finder to determine

9

credibility, weigh the evidence, and draw justifiable inferences of fact.'" Angei, 152 Hawaiʻi at 492, 526 P.3d at 469 (quoting State v. Yabusaki, 58 Haw. 404, 411, 570 P.2d 844, 848 (1977)).

Pacatan, the only eyewitness who saw the actual shooting occur, identified Reyes as the suspect shooter at trial and in a field show-up shortly after the incident occurred. The Circuit Court found Pacatan credible, and held that he was "forthcoming, detailed in his explanation."

Pacatan's testimony was corroborated by other witnesses. Miguel Cadoy (**Cadoy**) testified that on June 18, 2021 at 11:14pm, while driving past the off-ramp, he observed a white car and a darker-colored car parked on the left side of the off-ramp, and heard a "gunshot" sound. He later observed the same white car on Nalanieha Street. At 11:17pm, Cadoy reported to police the white car's location and full license plate. He observed two men outside of the car, one with a "white undershirt."

HPD Sergeant Tyler Parson (**Sergeant Parson**) received Cadoy's report and checked the area approximately ten minutes after the report, observing two men about a "hundred feet" from Nalanieha Street. At around 11:44pm, police dispatch called Reyes back regarding his report and Reyes confirmed that he was on the way to the Kalihi Police Station. At 11:50pm, upon returning to the station, Sergeant Parson testified that he observed the "same male" and identified Reyes.

Viewing the evidence in the "light most favorable to the prosecution and in full recognition of the province of the trier of fact," there was sufficient evidence to support a prima facie case so that a reasonable mind might fairly conclude that Reyes was guilty beyond a reasonable doubt and the suspect shooter in this case. See Angei, 152 Hawaiʻi at 492, 526 P.3d at

469.  The Circuit Court's denial of Reyes's Renewed MJOA was not erroneous.

For the foregoing reasons, the Judgment of Conviction and Sentence, filed on November 16, 2022 by the Circuit Court of the First Circuit, is affirmed.

DATED:  Honolulu, Hawai'i, March 28, 2024.

On the briefs:

Kevin A. Yolken,
for Defendant-Appellant.

Stephen K. Tsushima,
Deputy Prosecuting Attorney
for Plaintiff-Appellee.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge

11