STATE OF HAWAII, Plaintiff-Appellee *v.* FRANCIS MOKU MALANI, JR., Defendant-Appellant

NO. 5750

MAY 2, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY RICHARDSON, C.J.

In appealing his conviction of assault in the first degree, Francis Moku Malani, Jr., cites three errors: first, that a pre-arrest photographic display was unconstitutional because it was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification"; second, that a post-arrest photographic display was similarly unconstitutional; and third, that the Hawaii Constitution required the presence of his counsel when the post-arrest photographic display was conducted. Based on the three alleged errors, motions to suppress any eyewitness identification[1] were made at a pretrial hearing and at trial. Both motions were denied by the trial court.

We affirm.

### THE UNDISPUTED FACTS

On February 25, 1974, at 8:30 p.m., Jane Doe[2] was working alone in her business office located in an apartment building when a "very large man" walked in. Holding a gun in his hand, this man told Doe that she was about to die. Doe approached this man and grabbed his arm. After a short intense struggle, the man sat on Doe and choked her. She bit one of his fingers as hard as she could and then lost consciousness. Regaining consciousness about an hour later, Doe crawled to her neighbors who called the police. The police took Doe to Kaiser Hospital.

At Kaiser, a pelvic examination indicated recent sexual

---

[1] There are two types of eyewitness identification testimony which may be offered as evidence *at trial:* first, an *in-court* indentification of the defendant by the eyewitness, and second, testimony that the eyewitness has previously identified the defendant at a *pretrial* or *out-of-court* identification procedure (e.g., photographic display or lineup).

[2] A fictitious name for the victim.

intercourse. As a result of the attack, Doe suffered numerous injuries all over her body, including a serious one to her right arm. Doe stayed in the hospital for nearly a month.

That first night at the hospital, the police only briefly questioned Doe since the hospital staff had advised them that she was in no condition to talk to anyone. The police did obtain, however, some information from Doe: that the assailant was a huge man, possibly weighing over 300 pounds; that he was of apparent Hawaiian ancestry; and that she had heard rumors that a Mr. Pacarro who was opposing her in a lawsuit had threatened her.

The next day, on February 26, 1974, Doe was interviewed by detective Gonzalez who afterwards showed her photographs (front and side profiles) of large males having similar build and racial ancestry. Feeling "80 to 90 per cent sure," Doe picked the photo of appellant as that of her assailant. That photo was approximately six years old.

On March 1, 1974, appellant was arrested on charges of rape in the first degree and assault in the first degree. Appellant had a badly cut finger which he claimed resulted from a work injury occurring shortly after dawn on February 26, 1974. Later that day, detective Gonzalez brought more photographs to show to Doe. Again she picked the photo of appellant, positively identifying appellant as her assailant. That photo was a few hours old.

Appellant filed a motion to suppress any eyewitness identification by Doe on the grounds that the photographic displays on February 26 and March 1, 1974 were so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification and that appellant's counsel should have been present at the March 1 photographic display. A hearing on the motion was held on May 3 and 10, 1974. The motion was denied. A trial by jury was held on June 17, 18, and 19, 1974, at which time Doe positively identified appellant as her assailant. At the end of the trial, appellant renewed his motion to suppress. The motion was denied by the trial judge who had previously heard and denied the original motion to suppress. Appellant was found guilty of assault in the first degree.

THE PHOTOGRAPHIC DISPLAYS WERE NOT IMPERMISSIBLY
SUGGESTIVE

A conviction based on eyewitness identification at trial will be set aside if a pretrial identification by photographic display was conducted in a manner

> impermissibly suggestive as to give rise to a very sub-stantial likelihood of irreparable misidentification.

*Simmons v. United States,* 390 U.S. 377, 384 (1968); *State v. Padilla,* 57 Haw. 150, 153-54, 552 P.2d 357, 360 (1976).

Impermissible suggestiveness alone does not require the exclusion of identification evidence. *See Manson v. Brathwaite,* 432 U.S. 98, 109-114 (1977). If a pretrial photo-graphic identification procedure was impermissibly sugges-tive, then the crucial question is whether such identification procedure gave rise to a very substantial likelihood of irrepar-able misidentification, *i.e.,* whether under the totality of the circumstances the eyewitness identification was *reliable* de-spite the suggestiveness of the pretrial identification proce-dure. *Ibid.* The factors to consider in determining the reliabil-ity of the eyewitness identification include

> the opportunity of the witness to view the criminal at the time of crime, the witness' degree of attention, the accu-racy of his prior description of the criminal, the level of certainty demonstrated at the [photographic display], and the time between the crime and the [photographic display].

*Neil v. Biggers,* 409 U.S. 188, 199-200 (1972); *State v. Padilla, supra* at 154, 552 P.2d at 360.

If impermissible suggestiveness is absent, however, the question of the eyewitness identification's reliability need not be answered. Since we hold that there is substantial evidence to support a finding that no impermissible suggestiveness was present at either of the photographic displays, we do not answer the reliability question.

At the pretrial hearing on the motion to suppress, there was virtually no evidence of impermissible suggestiveness. Detective Gonzalez testified that on February 26, 1974, he

showed six photos to Doe who picked the photo of appellant.[3] Doe confirmed his testimony. Gonzalez then testified that on March 1, 1974, he showed twelve facial photos to Doe who again picked appellant's picture.[4] Doe stated that after she had positively identified appellant, she was then shown another photo of appellant with his bandaged finger. While admitting there was such a photo, Gonzalez first denied showing that to Doe. He later stated that he may have shown the photo to Doe but only after she had made a positive identification of appellant. The only hint of impermissible suggestiveness came from Doe's testimony that she was told on March 1 that appellant worked for Mr. Pacarro. She couldn't remember, however, whether she was told this prior to or after being shown the facial photos. The motion was denied.

At trial there was evidence of impermissible suggestiveness. Doe's testimony was considerably different in two respects from that given at the pretrial motion to suppress. First, she testified to seeing only two photos on February 26. She then testified she was informed on February 26 that the photo was six years old and that appellant worked for Mr. Pacarro. At the close of trial, appellant renewed his motion to suppress. Again the motion was denied.

While Doe's testimony at trial differed from her testimony at the pretrial motion to suppress, the trial judge was entitled to consider both testimonies along with Gonzalez' testimony at the pretrial hearing in ruling on the renewed motion. As a finder of fact in a motion to suppress, he was free to "accept or reject any witness' testimony in whole or in part." *State v. Cannon*, 56 Haw. 161, 166, 532 P.2d 391, 396 (1975). The same judge heard both motions to suppress. It was his responsibility to assess the credibility of witnesses, even of the same witness at different times, and to resolve all questions of fact in a motion to suppress. *Cf. ibid.*

---

[3] The six photos appear to show six different males, and appellant makes no argument to the contrary.

[4] Of the twelve photos, eleven were presented at the pretrial hearing. The missing photo was not one of appellant. The eleven photos appear to show eleven different males, and appellant makes no argument to the contrary.

In reviewing the sufficiency of the evidence to support a trial judge's ruling on a motion to suppress, this court "must take that view of the evidence . . . most favorable to the [ruling], without weighing the evidence or determining the credibility of the witnesses." *Ibid*. We cannot say that it was impermissibly suggestive to show six photos on February 26 or twelve facial photos on March 1. Since there is substantial evidence to support both rulings, they must stand. *Id*. at 164, 532 P.2d at 395.

## THERE IS NO RIGHT TO COUNSEL AT A PHOTOGRAPHIC DISPLAY

Appellant contends that under the Hawaii Constitution an accused has the right to have counsel present whenever the state conducts a post-arrest photographic display[5] containing a picture of the accused for the purpose of giving an eyewitness the opportunity to identify an offender.[6] He concedes that a similar argument based on federal constitutional law is foreclosed by *United States v. Ash*, 413 U.S. 300 (1973). The Hawaii Constitution provides that

[i]n all criminal prosecutions, the accused shall . . . have the assistance of counsel for his defense.

Art. I, § 11. The Sixth Amendment to the United States Constitution contains identical language. In *Ash*, such language was held not to provide a federal constitutional right to counsel at a post-indictment photographic display. Nothing at this time suggests, with respect to appellant's contention, that the Hawaii Constitution extends further than the United States Constitution. We are not yet persuaded that the potential abuse and the problems of misidentification in the use of

---

[5] The second photographic display of March 1, 1974, was conducted after appellant's arrest but before his indictment.

[6] This is to be distinguished from the contention that a defendant has the right to have counsel present at a post-indictment lineup. *See*, United States v. Wade, 388 U.S. 218 (1967).

photographic displays are so great as to mandate the presence of counsel. Accordingly, this court holds that the state constitution provides no right to counsel at a post-arrest photographic display.

Affirmed.

*Renee M. L. Yuen*, Deputy Public Defender, for defendant-appellant.

*Randolph Slaton*, Deputy Prosecuting Attorney, for Plaintiff-Appellee.