STATE OF HAWAII, Plaintiff-Appellee, *v.* SONYA KUTZEN, Defendant-Appellant, and CHARLENE M. OPUNUI, also known as Charlene M. Keohuhu, DAISY TAGATA, also known as Daisy Lorenso and Linda D. K. Manning, and JUANITA GAY K. COLBURN, Defendants

NO. 7525

STATE OF HAWAII, Plaintiff-Appellee, *v.* CHARLENE M. OPUNUI, also known as Charlene M. Keohuhu, Defendant-Appellant, and SONYA KUTZEN, DAISY TAGATA, also known as Daisy Lorenso and Linda D. K. Manning, and JUANITA GAY K. COLBURN, Defendants

NO. 7647

DECEMBER 2, 1980

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY PADGETT, J.

In these two appeals brought by Appellants Kutzen and Opunui from their conviction for theft in the first degree (Hawaii Revised Statutes § 708-831(1)(b)) we address two issues:

(1) Whether the lower court erred in denying defendants' motion to suppress photographic identification on the ground that the identification procedure was not so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification, and

(2) Whether the use of police mug shots by the prosecution as evidence in its case in chief was so prejudicial as to require reversal.

On the first issue, we find the photographic lineup impermissibly suggestive but remand for a determination of the question of whether it gave rise to a very substantial likelihood of misidentification. On the second issue, we reverse.

## FACTS

On May 23, 1978, a group of five female shoppers in Sears Department Store were observed for approximately forty-five minutes as they moved about various departments in the store by store detectives Roy Okubo and William Gunderson. In the men's department, two of the women, one of whom was later identified as Defendant Kutzen, filled a Sears bag with men's clothing and passed the package to a third who along with Defendant Kutzen left the store. The two women returned from the parking lot to the boys' department and assisted the other women, one of whom was later identified as Defendant Opunui, in filling another bag with boys' wear. While that bag was taken again to the parking lot by one of the women, Defendant Opunui and another woman proceeded to infant wear where they placed more clothing in a Sears bag and then walked out of the store.

Gunderson followed the women out of the store but saw only four individuals. He quickly ran down a flight of stairs to seek the whereabouts of the fifth suspect. When he returned to the prior location of the four women outside Sears, Okubo was standing with one of the suspects; the others, including those later identified as Defendants Opunui and Kutzen, escaped.

Gunderson immediately wrote a description of the suspects in his notebook. Approximately ten weeks later, he was called to the police station to view a group of five pictures, all of women who the police believed had engaged in similar illegal activity in the past. Four of the suspects were identified from the photos as the unidentified shoplifters.

## THE PHOTOGRAPHIC ARRAY

At the hearing on the motion to suppress identification, counsel for Appellants Kutzen and Opunui argued that the procedure employed by the police was so "impermissibly suggestive as to give rise to a very substantial likelihood of

irreparable misidentification''. *State v. Malani*, 59 Haw 167, 170, 578 P.2d 236, 238 (1978) (quoting *Simmons v. U.S.*, 390 U.S. 377, 384 (1968). Appellants appeal the lower court's denial of their motion.

On appeal, to determine the validity of appellants' contention, we must consider whether the "pretrial photographic identification procedure was impermissibly suggestive, . . ." and, if so, "whether under the totality of the circumstances the eyewitness identification was *reliable* despite the suggestiveness of the pretrial identification procedure." *Malani, supra*, 59 Haw. at 170, 578 P.2d at 238; *Manson v. Brathwaite*, 432 U.S. 98, 109, 114 (1977).

Appellant argues under the first part of this analysis that the presentation to the store detectives of five photographs for identification of four perpetrators was tantamount to presenting one photograph for identification of one perpetrator. Notwithstanding the government's protestations to the contrary, we view this proposition to be self-evident. The distinction between a photographic array of five photographs presented to an eyewitness who seeks to identify four perpetrators of a crime and a photographic array consisting of one photograph presented to an eyewitness who seeks to identify one perpetrator of a crime is without significance. *Cf. U.S. v. Cueto*, 611 F.2d 1056, 1064 (5th Cir. 1979) (Held: photo array consisting of two pictures presented to eyewitness who sought to identify two perpetrators of the crime was impermissibly suggestive.) In both instances, the process of selecting from among photographs that depict characteristics common to the defendant can take place without the safeguard of a discriminating choice between alternatives. Such a procedure increases the danger that the "employment of photographs by police may sometimes cause witnesses to err in identifying criminals", *Simmons v. U.S., supra*, 390 U.S. at 383, and has received the unanimous condemnation of courts where its use was not justified by emergency or exigent circumstances. *See, e.g., Manson v. Brathwaite, supra*, 432 U.S. at 109; *Simmons v. U.S., supra*, 390 U.S. at 383; *U.S. v. Cueto, supra*, 611 F.2d at 1064; *Hudson v. Blackburn*, 601 F.2d 785, 788 (5th Cir.

1979); *U.S. v. Kimbrough*, 528 F.2d 1242, 1247 (7th Cir. 1976).

Here, no exigent circumstances existed. The police had ample opportunity during the more than ten weeks after the offense to include additional photographs from their files in the photographic array. Thus, the photographic identification procedure employed by the police was impermissibly suggestive.

The question of whether, under the totality of the circumstances, the photographic identification was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification, *see, Manson v. Brathwaite, supra,* 432 U.S. at 116; *State v. Malani, supra,* 59 Haw. at 170, 578 P.2d at 238, was not addressed by the court below. On remand, if appellant is retried, the trial court may conduct such further proceedings as it deems necessary to determine the issue.

### THE MUG SHOTS

Prior to trial, the court heard argument *in limine* on the use of color police photographs as evidence at trial of Detective Gunderson's identification of appellants at the photographic array. The government sought the admission of two double-shot photographic exhibits, each consisting of a front and profile view — one of Opunui and the other of Kutzen. Police identification numbers appeared across the bottom half of each photograph. Defense counsel objected to the admission of the photographs on the ground that they suggested prior criminal activity by appellants.

The court ruled the photographs could be admitted on the condition that (1) all marks identifying them as "mug shots" be removed and (2) no reference to their origin or place of viewing be made.

At trial, Gunderson, the government's only witness in its case-in-chief, made an in-court identification of appellants as perpetrators of the crime. Thereafter, the government moved the photographs into evidence in its case-in-chief for purposes of establishing the store detective's prior identification of the defendants as the shoplifters. Defense counsel im-

mediately asked to approach the bench. At the bench, the court ascertained that the photographs were not masked sufficiently to prevent the jurors from identifying them as mug shots. Consequently, the government stapled pieces of white paper across the bottom of the double-shot photos to block the police identification numbers. The court found this adjustment adequate to safeguard against any suggestion of prior criminal activity and permitted the photographs to be admitted into evidence.

At this point in the proceedings, a juror signaled through the bailiff to the court that she wished to ask a question. At the bench, she asked:

JUROR: Yes. I want to know how, who, when about those pictures; who took those pictures and how.

In response, the court explained:

COURT: All that a juror can do — I think this is a misunderstanding. A juror cannot ask questions. All the juror can do is listen to what the witnesses have to say and consider what they have to say. I think — you may be — there was a misunderstanding when one of the attorneys mentioned that the juror can ask questions, but the juror cannot ask questions. All you can do is listen, and if what you listen to does not satisfy you, then you make your decisions on the basis of what you heard, okay? Is that — do you understand that?

Again, during deliberations, the following inquiry was sent to the court:

Judge Huddy, the jury would like to know who, where and when pictures of the defendants taken,

The court replied:

Ladies and gentlemen of the jury, you are to consider only the evidence which has been presented before in this case.

On appeal, appellants contend the photographs suggested to the jury their participation in prior criminal activity. We agree.

Our Supreme Court has twice stated that the term "mug shot" used before a jury by a prosecutor with reference to a previous photographic identification of a defendant has the

prejudicial affect of suggesting to the jury prior criminal activity. *State v. Pulawa,* 62 Haw. 209, 219, 614 P.2d 373, 379 (1980); *State v. Huihui,* 62 Haw. 142, 145, 612 P.2d 115, 117 (1980). *Cf. State v. Kahinu,* 53 Haw. 536, 549-50, 498 P.2d 635, 644 (1972).

The use of mug shots as evidence at trial presents no less a suggestion of prior criminal activity:

> The double-shot picture, with front and profile shots alongside each other, is so familiar, from "wanted" posters in the post office, motion pictures and television, that the inference that the person involved has a criminal record, or has at least been in trouble with the police, is natural, perhaps automatic.

*Barnes v. U.S.,* 365 F.2d 509, 510-11 (D.C. Cir. 1966). *Quoted in U.S. v. Fosher,* 568 F.2d 207, 213 (1st Cir. 1978). Indeed, courts have employed a variety of safeguards to disguise the origin of police photographs, including the removal of police identification numbers, *U.S. v. Watts,* 532 F.2d 1215 (8th Cir. 1976), separation of the combined profile and frontal views characteristic of police mug shots, *Id.,* and instructions to the jury to disregard any unfavorable inferences that might arise from the taping of the photographs. *U.S. v. Johnson,* 495 F.2d 378 (4th Cir. 1974). Other factors considered by courts in determining the admissibility of mug photographs include the importance of the photographic evidence to the prosecutor's case, *U.S. v. Reed,* 376 F.2d 226, 228 n.2 (7th Cir. 1967); *Barnes v. U.S., supra,* 365 F.2d at 510-11, and the manner in which the photographic evidence is introduced, i.e. whether the actions of counsel or the prosecutor could lead the jury to "infer that there is something extremely damaging or suspicious about the photograph itself. . . ." *U.S. v. Fosher,* 568 F.2d 207, 214 (1st Cir. 1978).

In this unpredictable area rife with *ad hoc* efforts to prevent the prejudicial inference of prior criminal activity we adopt the rule stated by the First Circuit in *U.S. v. Fosher, supra,* and apply three criteria to determine whether the admission of police photographs at trial was proper:

> 1. The Government must have a demonstrable need to introduce the photographs; and

2. The photographs themselves, if shown to the jury, must not imply that the defendant has a prior criminal record; and

3. The manner of introduction at trial must be such that it does not draw particular attention to the source or implications of the photographs.

568 F.2d at 214.

Under part one of this test, the government in the present case failed to demonstrate a need to introduce the photographs of Appellants Kutzen and Opunui. They were introduced not to rebut any inferences of unreliability as to Gunderson's identification of appellants, but to simply establish his pretrial identification of her as part of the prosecution's case-in-chief. Indeed, the admission of the photographs into evidence after Gunderson made an unequivocal in-court identification of appellants was unnecessary.

Secondly, the appearance of the mug shots themselves inferred that the defendants had prior criminal records. They consisted of combination frontal and profile views of each defendant, with pieces of white paper folded and stapled to mask the identification numbers on their bottom portions. Moreover, a physical examination of the exhibits shows that an inquisitive juror could easily, without removing any staples, have seen the police mug shot identification numbers on the photographs. This is particularly easy in the case of Exhibit 2A, the photograph of Appellant Opunui. Since the jury twice asked the court to explain the origin of the photographs, it is evident that their curiosity was aroused.

Finally, we consider whether the manner of introduction at trial drew particular attention to the source or implications of the photographs. The request by defense counsel to approach the bench after the government requested the admission of the photographs cannot, by itself, be said to have drawn undue attention to them. Nor do we find the court's decision to admit the photographs with the proviso that their identification numbers be further disguised outside the presence of the jury to be improper. The masking itself, however, as we have pointed out, was insufficient so that the manner of

the photographs' introduction at trial could have drawn particular attention to their source.

In light of the appearance of the photographs as admitted and the absence of a demonstrable need for their use at trial, we cannot but conclude that the lower court's admission of the photographs was error.

The standard of review applied to the erroneous admission of evidence of prior crimes is whether "the error was harmless beyond a reasonable doubt." *State v. Pulawa, supra,* 62 Haw. at 220, 614 P.2d at 380. In the present case, Detective Gunderson's identification of appellants constituted the government's entire case; there exists at least a reasonable doubt that the error was harmless.

Having so ruled, we deem it unnecessary to consider the other issues raised on appeal.

Reversed and remanded for proceedings consistent with this opinion.

*Kevin C. Kennedy,* for defendant-appellant Sonya Kutzen.

*Anson O. Rego,* for defendant-appellant Charlene M. Opunui.

*Faye M. Koyanagi,* Deputy Prosecuting Attorney, for plaintiff-appellee.