STATE OF HAWAII, Plaintiff-Appellee, *v.* EDWIN KAUPE MANIPON, Defendant-Appellant, and LONNIE WESLEY WILSON, Defendant

NO. 7942

CRIMINAL NO. 53185

OCTOBER 7, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY HAYASHI, C.J.

The Defendant-Appellant was found guilty by a jury of two counts of Robbery in the First Degree.[1] On appeal, he urges this

---

[1] Hawaii Revised Statutes (HRS) § 708-840 defines robbery in the first degree as follows:

§ 708-840 *Robbery in the first degree.* (1) A person commits the offense of robbery

court to reverse his convictions on the grounds (1) that the lower court erred in denying his motion for acquittal as there was insufficient evidence for a jury to fairly determine guilt beyond a reasonable doubt; (2) that there was insufficient evidence to support the jury's verdict; and (3) that it was plain and reversible error for the court to admit police photographs used during a photographic lineup. We disagree and affirm.

Randy Flathers, Ben Jakoski, Kenneth D'Lin, and Thomas Jakoski resided in Apt. 004 at 98-279 Moanalua Loop, Honolulu, Hawaii. On May 24, 1979, Flathers and Tom Jakoski were at home along with a visitor, Jeffery Jones. At around 7:00 p.m., three uninvited persons, one of whom bore a sawed-off shotgun, burst into the apartment and ordered its occupants onto the floor. Jones, who was sitting on a sofa, was ordered to recline thereon, face down. The three uninvited persons demanded money; and the person wielding the shotgun positioned himself on Jakoski's back, yanked his head up by his hair, slapped him in the face, and removed his wallet. The apartment was ransacked and Jakoski heard one of the uninvited persons express a desire to shoot someone, to which one of his companions stated, "No, we don't need that, Lani [sic]." From this, Jakoski presumed "Lani" was the one with the gun.

In the meantime, D'Lin was returning home and had been advised by a neighbor that some unsavory-looking individuals were inside his apartment. He knocked on the door and was told by one of the uninvited persons that he and his companions were "taking care of business." D'Lin went upstairs to a neighbor's apartment to phone the police. The uninvited persons then tied the hands and feet of Jakoski, Flathers, and Jones and fled the scene. The police arrived immediately thereafter and picked up the chase. Lonnie Wilson and Edward Manipon, the appellant in this action, were apprehended by

---

in the first degree if, in the course of committing theft:
 (a) He attempts to kill another, or intentionally inflicts or attempts to inflict serious bodily injury upon another; or
 (b) He is armed with a dangerous instrument and:
  (i) He uses force against the person or any person present with intent to overcome the owner's physical resistance or physical power of resistance; or
  (ii) He threatens the imminent use of force against the person of anyone who is present with intent to compel acquiescence to the taking of or escaping with the property.

 . . . .

police officers who followed the directions of several citizens who had observed the fleeing men. At the time he was apprehended and placed under arrest, the appellant was in possession of the sawed-off shotgun and Jakoski's wallet.

The following day, Flathers, Jones, Jakoski and D'Lin participated in a photographic lineup conducted by Detective Chang of the Honolulu Police Department (HPD) during which they were asked to identify the persons who had entered their apartment the previous day. They were each shown two sets of seven photographs. Manipon's photograph was in the first group and Wilson's photo was in the second group. D'Lin was only able to identify Wilson's photo. Jakoski could make no identification at all. Flathers selected two photographs of persons other than the defendants, and only Jones was able to identify both Wilson and Manipon as the perpetrators. Jones testified that Wilson had the gun, as did D'Lin.

At trial, the victims gave testimony as indicated. There was also testimony by HPD Officer Lum, who apprehended Wilson, and HPD Officer Lim, who chased Manipon across Kam Highway. Officer Lim testified that he ordered Manipon to halt. Manipon turned and Officer Lim saw the "rifle." Manipon refused Officer Lim's order to drop the "rifle," and Officer Lim shot him in the foot. At trial, Officer Lim identified appellant as the person he had apprehended on that evening with a sawed-off shotgun and Jakoski's wallet in his possession, and Evidence Technician Murayama testified that he recovered two cartridges in the shotgun which were turned over to Criminalist Milton Hong.

Michael Vasquez testified that he was working at Associated Steel Company on the night in question and saw a big man running across the yard with an object that looked like "a piece of iron." A police officer was in pursuit of him; and Vasquez, at the officer's request, pointed out the direction in which the appellant had fled.

HPD Officer Rodrigues testified that he was also called to the scene of the robbery; and when Officers Lim and Lum took up the chase of the fleeing parties, he, along with Jones, proceeded in his auto where he issued an all-points bulletin. He and Jones drove onto Kam Highway and were directed by an unidentified person who had seen the appellant run along the bike path pursued by the police and had heard shots fired. He followed the directions and found Officer Lim and the appellant with the shotgun and wallet.

Criminalist Milton Hong testified that he test-fired the shotgun recovered by Officer Lim with one of the cartridges turned over to him by Evidence Technician Murayama, and found it to be in operating condition.

During the testimony of Detective Chang, who conducted the photographic lineup, the State sought to admit into evidence all the police photos used in the lineup in order to establish a basis for the victim's inability to identify the appellant, given the brief opportunities they had to view him. At that time, the following discussion took place:

MR. MIYASAKA: May we approach the bench?

THE COURT: Yes.

(Whereupon, bench conference had, outside the hearing of the jury.)

MR. MIYASAKA: Your Honor, our *only objection would be that if the Court notes, on the bottom of the photographs there's a date when the photographs were taken.* Now, if the Court admits them as it is, I believe the jury will know when he was arrested. Therefore, *we would not object to the photographs being admitted if the bottom portion is cut off, because* there's no way the court can prevent the jury from looking under the white paper. [Emphasis added.]

MR. MENDONCA: What if the Court instructs the jury to leave —

MR. MIYASAKA: The instruction is not going to be sufficient, because you can look at them accidentally. It creates an impression that he was arrested on a prior occasion and that he has a prior criminal record. I think the proper way to do it, if he's going to submit it to the jury, *just have the clerk cut off the bottom part of the photograph.* [Emphasis added.]

THE COURT: Well, we'll just glue it down.

MR. MIYASAKA: It's so much easier to just cut it off. It's going to have to go into the record anyway. The Police Department can't take them back.

THE COURT: I don't like to cut them off.

MR. MENDONCA: I think I can offer the same photographs by gluing or stapling them.

MR. MIYASAKA: As long as some safeguard is taken so they cannot see the dates, the information contained on the bottom of the photographs.

THE COURT: Staple or glue, Mr. Miyasaka?

MR. MIYASAKA: Glue.

* * *

THE COURT: All right, these exhibits shall be received in evidence with the stipulation that the identification as indicated on each one of these exhibits shall be stricken such that you wanted the identification as shown covered, and a white slip shall be pasted on those.

MR. MIYASAKA: Yes, sir.

(Bench conference concluded.)

MR. MENDONCA: At this time State will renew its motion to have these pictures — I guess it's already been made a part of the record; excuse me, admitted into evidence.

MR. MIYASAKA: Your Honor, *subject to what we discussed, we would be willing to stipulate it coming into evidence under the conditions we discussed.* [Emphasis added.]

Appellant called no witnesses and moved for a judgment of acquittal on the three counts.[2] The court granted the motion as to Count I and denied it as to Counts II and III. The jury returned a verdict of guilty as to both Counts II and III, and this appeal followed.

Appellant first contends that the lower trial court erred in denying his motion for judgment of acquittal because there was insufficient evidence for a jury to fairly determine his guilt beyond a reasonable doubt.

The standard to be applied by the trial court in ruling upon a motion for judgment of acquittal is whether, upon the evidence viewed in the light most favorable to the government, and giving full play to the right of the jury to determine credibility, weigh the evidence, and draw therefrom justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. *State v. Brighter,* 62 Haw. 25, 608 P.2d 855 (1980).

---

[2] Appellant and Lonnie Wilson were indicted for three counts of Robbery in the First Degree. Count I was with reference to robbery against Jeffery Jones, Count II was with reference to Thomas Jakoski, and Count III was with reference to Randy Flathers. However, only appellant went to trial on both Counts II and III, Lonnie Wilson having entered into a plea bargain with the prosecutor.

In *State v. Murphy*, 59 Haw. 1, at 19-20, 575 P.2d 448 (1978), our supreme court cites with approval *Curley v. United States*, 160 F.2d 229, (D.C. Cir.), *cert. denied*, 331 U.S. 837 (1947) as follows:

> [I]f there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, the motion must be granted. If . . . [the trial judge] . . . concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, he must let the jury decide the matter. In a given case, particularly one of circumstantial evidence, that determination may depend upon the difference between pure speculation and legitimate inference from proven facts.

Appellant was charged with robbery in the first degree as defined above. HRS § 708-842 defines the term "in the course of committing a theft" for robbery as follows:

> § 708-842 *Robbery; "in the course of committing a theft."* An act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft, in the commission of theft, or in the flight after the attempt or commission.

Conceding the difficulty incurred in making identification of the defendants at trial due to the manner in which the event occurred and the brief opportunity the victims had to view their three assailants, there was still sufficient evidence at the close of the prosecution's case to withstand the motion for acquittal. Appellant had been positively identified as a perpetrator by at least one of the victims;[3] and at the time of his arrest, he was "in flight" from the scene being hotly pursued by Officer Lim. When apprehended, the sawed-off shotgun used against the victims was in his possession as was a wallet belonging to Jakoski. The evidence when thus viewed in the light most favorable to the State, presented a jury question regarding appellant's complicity in the robbery; and where there is sufficient evidence to establish a *prima facie* case against the appellant, the trial court's denial of his motion for judgment of acquittal will be upheld. *State v. Brighter, supra; State v. Rushing,* 62 Haw. 102, 612 P.2d 103 (1980).

Moreover, after a careful review of the evidence, we are satisfied

---

[3] Although the third person got away and we have no comparative evidence of his size in relation to the two persons who were caught, all of the victims testified that the person wielding the shotgun was the largest of the three individuals.

that the prosecution's evidence did not represent a case of "pure speculation," and the action of the trial court in allowing the jury to draw "justifiable inferences of fact" from the evidence presented by the prosecution did not constitute error. *State v. Murphy, supra.*

Appellant next argues that under the plain error rule this court must conclude that the admission into evidence of the police photographs despite his lack of objection and, in fact, his acquiescence in their admission, requires reversal. He relies on *State v. Kutzen,* 1 Haw. App. 406, 620 P.2d 258 (1980), in support of his contention on appeal that the admission was not harmless beyond a reasonable doubt. In *Kutzen,* four defendants were to be identified from a photographic display of only five photos at trial by a store detective. Folded slips of paper were crudely stapled over the bottom portions of the photographs to "mask" the dates of arrest and identifying numbers. Defense counsel vehemently objected to their admission, arguing that the use of police photographs for in-court identification was impermissibly suggestive and created a clear implication that defendants had previously been arrested. In fact, the jury apparently thought so too, for in the course of their deliberations, they twice inquired of the court as to the source of the photographs.

Appellant's failure to raise a proper objection to the admission of the photographs is fatal to his argument on this appeal. It is the general rule that evidence to which no objection has been made may properly be considered by the trier of fact, and its admission will not constitute grounds for reversal on appeal. *State v. Naeole,* 62 Haw. 563, 617 P.2d 820 (1980); *State v. Pastushin,* 58 Haw. 299, 568 P.2d 504 (1977). It is equally established that an issue raised for the first time on appeal will not be considered by the reviewing court. *State v. Kahalewai,* 56 Haw. 481, 541 P.2d 1020 (1975). Counsel having failed to raise a proper objection and having stipulated to the photographs being submitted into evidence, we decline to address this issue.

We have carefully reviewed the record in this case and find substantial evidence to support the conviction. *State v. Tamura,* 63 Haw. 636, 633 P.2d 1115 (1981); *State v. Summers,* 62 Haw. 325, 614 P.2d 925 (1980); *State v. Hernandez,* 61 Haw. 475, 605 P.2d 75 (1980). Accordingly, the judgment is affirmed.

*Duffy J. Mendonca,* Deputy Prosecuting Attorney, for plaintiff-appellee.

*Keith M. Kiuchi,* Deputy Public Defender, for defendant-appellant.