STATE OF HAWAII, Plaintiff-Appellee, *v.* WILLIAM EMIL EMMSLEY and RUDOLPH P. NA'O, JR., also known as Bandit and Rudy, Defendants-Appellants, and RICHARD A. CANAPE, also known as Frito, Defendant

NO. 8126

(CRIMINAL NO. 54574)

OCTOBER 27, 1982

BURNS, C.J., HEEN AND TANAKA, JJ.

460

OPINION OF THE COURT BY HEEN, J.

Defendants William Emil Emmsley (Emmsley) and Rudolph P. Na'o, Jr. (Na'o) appeal from their convictions of murder under Hawaii Revised Statutes (HRS) § 707-701 (1976) and carrying a pistol or revolver on their persons without a permit or license under HRS § 134-9 (1976, as amended).

Defendants jointly raise two points of error by the trial court and individually raise a separate point each.

The points of error jointly raised are:

1. That the trial court erred in denying their motions for judgment of acquittal made at the close of the State's case; and

2. That the trial court erred in not permitting defendants to impeach the State's key witness, Richard Canape (Canape), by proving that he had been adjudged by the family court to be a juvenile law violator due to his commission of the offenses of malicious conversion[1] and larceny.

Emmsley individually contends that the court erred in not allowing him to cross-examine Canape as to compensation he may have received from the State in exchange for his testimony as part of a

---

[1] This was the old nomenclature for theft of an automobile.

plea bargain, and the prerogative of the prosecutor to nullify the agreement.

Na'o contends that the trial court erred in not requiring the State to furnish him the name of a confidential police informant.

We find no reversible error and affirm.

On August 6, 1980, the Oahu Grand Jury returned a three-count indictment against the defendants. In Count I, the defendants were jointly charged with the murder of Ruth Bender (Bender) by shooting her with a firearm. In Counts II and III, Emmsley and Na'o, respectively, were each charged with carrying a pistol or revolver on his person without a permit or license.

The State's entire case rested on the testimony of Canape, who was an accomplice. Canape testified that on April 28, 1980, he rented a car and picked up Emmsley and a person named Darrell at about 8:00 or 8:30 p.m., "to go cruising." They eventually ended up at Jimmy's bar on Hotel Street in downtown Honolulu. While they drank and played pool, Darrell left. Na'o came into the bar and called Emmsley out. About fifteen minutes later they returned and Emmsley asked Canape if he could give them a ride. Canape agreed and the three left the bar.

Outside the bar they approached Bender, and Na'o asked her if she had the money she owed him. Bender replied that she did not, and Na'o stated he had to call his partner. He then went across the street to use a phone. At this time Bender was crying. Na'o rejoined Canape, Emmsley, and Bender and told them that they should go. They got into the rented automobile and Canape drove, with Na'o and Bender sitting in the rear seat and Emmsley in the front passenger seat.

Na'o directed Canape to drive to Kunia. On the way, Na'o said he was going to shoot Bender because she owed him $200. As he drove, Canape saw Emmsley loading a .22 caliber revolver. Along the way, Bender was crying and Na'o struck her saying it was too late, that she was going to die. At Na'o's direction, Canape drove to "the old loading dock" in Kunia. When they arrived, he was told to reverse the car into a dirt road and turn off the lights. Na'o instructed Bender to remove her clothing and jewelry and place them in her bag. Emmsley, Na'o and Bender got out of the car. As they walked behind the car, Na'o grabbed Bender, threw her towards the bushes, and started firing at her. After three or four shots, Na'o stopped and

told Emmsley to shoot. Emmsley then shot four or five times, and Na'o shot a "couple more" times.

When the shooting stopped, Na'o directed Canape to turn the car around, turn on the lights, and help him look for cartridge shells. When he turned the lights on, Canape saw Bender's body. They did not find any shells and Canape, Na'o and Emmsley got back into the car. Canape then drove to Na'o's house in Maili where Emmsley and Na'o rubbed vinegar on their arms to "take the gun powder smell off." They then drove to another house where Na'o dropped off Bender's belongings and Na'o's "handgun." Canape testified that Na'o placed the "handgun" in Bender's bag. They had left the murder scene about 2:00 a.m. and, after the trip to Maili, returned to Honolulu. Na'o then drove in his own car with some friends to Ala Moana Park, where they met Canape and Emmsley, who had driven in the rental car, and drank some beer. At the park, Na'o told Emmsley and Canape not to tell anybody what happened or they would end up like Bender.

1.

Defendants' point of error regarding their motions for judgment of acquittal is directed only to Counts II and III of the indictment. They argue that there was no evidence presented at trial to show or from which to infer that the firearms they were alleged to have possessed had barrels less than twelve inches in length and, therefore, the court erred in not granting their motions.[2]

Initially, we address Na'o's decision to proceed with his defense by calling Officer Vernon Branco (Branco) to testify. In *State v. Halemanu*, 3 Haw. App. 300, 650 P.2d 587 (1982), *cert. denied*, \_\_\_ Haw. \_\_\_ (October 7, 1982), we adopted the majority rule that a defendant who presents evidence after denial of his motion for judgment of acquittal at the close of the state's case thereby waives any error in that ruling by the trial court.

We are aware that the "waiver doctrine" has been subjected to criticism, and some jurisdictions have fashioned exceptions or

---

[2] This precise argument was not raised in the trial court. Defendants argued only briefly and generally that the evidence was insufficient.

limitations to its application to ameliorate its apparently harsh effect. *See State v. Simpson,* 64 Haw. 363, 641 P.2d 320 (1982). While not specifically adopting the waiver doctrine, our supreme court in *Simpson,* 64 Haw. at 371, 641 P.2d at 325, noted that it serves an important function in the criminal justice system in that it requires the defendant, if he presents evidence after denial of his motion, to assume the risk that his evidence may in fact be favorable to the government. The court ruled in *Simpson,* however, that, regardless of whether only the government's evidence or all the evidence was considered, there was sufficient evidence presented such that the trial court's denial of the motion was proper. *Id.* 64 Haw. at 372-73, 641 P.2d at 326.

Likewise, finding the evidence in the case before us to be sufficient in either event, it is not necessary for us to rule that Naʻo waived any error in the trial court's ruling on his motion. This is especially so, since neither defendant renewed his motion for judgment of acquittal at the end of the trial.

HRS § 134-9 (1976) under which defendants were charged reads, in pertinent part:

No person shall carry concealed or unconcealed on his person a pistol or revolver without being licensed so to do under this section or in compliance with section 134-6.[3] [Footnote added.]

At the time of the offense, HRS § 134-1 (1976) defined pistol or revolver:

"Pistol" or "revolver" means any firearms of any shape whatsoever with barrel less than twelve inches in length and capable of discharging loaded ammunition or any noxious gas.[4] [Footnote added.]

---

[3] Although the statute has been amended several times, this portion has remained unchanged since 1971.

[4] Neither defendant requested an instruction setting forth the provisions of the statute. The only instruction relating to the firearm charges was requested by the State. It was given by agreement as follows:

The Defendants are charged in Counts II and III with having committed the offense of Carrying Firearm on Person Without Permit or License.

A person commits the offense of Carrying Firearm on Person Without Permit or License if he carries on his person a pistol or revolver without a permit or license to do so.

There are two material elements to this offense, each of which must be proven

The firearms used in the murder were never recovered, but bullets of both .22 and .38 caliber were recovered from Bender's body. Canape testified that both Naʻo and Emmsley shot Bender, and that Emmsley had a ".22 caliber revolver" and Naʻo had a "handgun."

The standard to be applied by the trial court in ruling upon a motion for judgment of acquittal is whether, upon the evidence viewed in the light most favorable to the government, and giving full play to the right of the jury to determine credibility, weigh the evidence, and draw therefrom justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. *State v. Alfonso,* 65 Haw. 95, 648 P.2d 696 (1982); *State v. Simpson, supra; State v. Brighter,* 62 Haw. 25, 608 P.2d 855 (1980); *State v. Manipon,* 2 Haw. App. 492, 634 P.2d 598 (1981). If there is no evidence upon which a reasonable mind might conclude guilt beyond a reasonable doubt, the motion must be granted. Conversely, if the trial judge concludes that there is evidence upon which a reasonable mind might conclude guilt beyond a reasonable doubt, the motion must be denied. *State v. Faulkner,* 1 Haw. App. 651, 624 P.2d 940 (1981). In a given case, particularly one of circumstantial evidence, that determination may be dependent upon the difference between pure speculation and legitimate inference from proven facts. *State v. Murphy,* 59 Haw. 1, at 19, 575 P.2d 448, at 460 (1978). *See also State v. Simpson, supra.*

In this case our inquiry is whether the evidence was such that a reasonable mind could fairly infer from the facts proven beyond a reasonable doubt that the barrels of the firearms possessed by defendants were each less than twelve inches in length.

An inference is a logical and reasonable conclusion of the existence of a fact in a case, not presented by direct evidence as to the existence of the fact itself, but inferred from the establishment of other facts from which, by the process of logic and reason, and *based upon human experience,* the existence of the assumed fact may be

---

by the prosecution beyond a reasonable doubt. They are:
1. That the Defendants did carry a pistol or revolver on their person;
2. That they did so without a permit or license.
The State's original request was modified in conference among court and counsel to include the words, "or revolver" in the second paragraph and in subparagraph 1.

concluded by the trier of fact. 29 AM.JUR.2d, *Evidence,* § 161 (1967). In weighing the proven facts, the jury must rely upon its experience with people and events. *See State v. Bush,* 58 Haw. 340, at 343, 569 P.2d 349, at 351 (1977).

Webster's Third New International Dictionary 1938 (1967) de-fines revolver as:

[A] handgun having a cylinder of several chambers that are brought successively into line with the barrel and discharged with the same hammer — compare PISTOL;

pistol as:

[A] short firearm intended to be aimed and fired with one hand;

and handgun as:

[A] firearm held and fired with one hand.

By definition, therefore, both revolvers and handguns are short firearms intended to be fired with one hand.

We think that the widespread exposure through the news and entertainment media of the use and operation of firearms, in crime and otherwise, is sufficient so as to create in the minds of the citizens of this community the understanding that weapons that are called revolvers or handguns are designed to be operated with one hand, are small enough to be so operated, have short barrels, and that those barrels are less than twelve inches in length. Almost daily, newspaper stories are published, complete with pictures, of how a pistol, revolver, or handgun has been used in the commission of a crime. With the same frequency, television news broadcasts have shown these weapons, sometimes in actual use. We note also that entertainment media have graphically displayed on stage and screen that handguns are weapons with short barrels.

Proposals for the licensing and registration of firearms have been the subject of national and local debate, and reported in the news media, for at least two decades. A part of that debate has centered around the difference between rifles and handguns, the latter having shorter barrels.

All of these materials clearly portray the handgun as having a barrel considerably less than twelve inches in length. Anyone who has not in this day and age been exposed to these matters would have to have been a complete recluse.

The matters relating to firearms to which the general public, including the jurors in this case, has been exposed could lead a

reasonable mind to infer that the "revolver" and the "handgun" testified to by Canape had barrels less than twelve inches in length.

We find *State v. Naeole*, 62 Haw. 563, 617 P.2d 820 (1980), to be inapposite to the case at bar. In *Naeole* the evidence was confusing at best, with witnesses describing the firearm in question as a "rifle," a "long gun," a "handgun with a long barrel," and "not as long as a cowboy pistol."

Here, the evidence was sufficient to establish, at least at the close of the government's presentation, a prima facie case, *see Faulkner*, 1 Haw. App. at 654, 624 P.2d at 943 (1981), and the trial court correctly allowed the jury to consider the evidence and determine whether or not defendants were guilty.[5]

2.

At trial, before Canape testified, defendants made an offer of proof to the court that Canape had been adjudged by the Family Court of the First Circuit to be a juvenile law violator, and requested that they be allowed to introduce those adjudications in evidence in order to impeach his credibility. Defendants had served a subpoena duces tecum on the custodian of records of the Family Court. The State Attorney General filed a Motion to Quash the subpoena and appeared at the hearing. The motion was withdrawn at the suggestion of the judge, and the judge ruled that Canape's juvenile record could not be used to impeach his testimony, because the offenses by Canape were not relevant to his propensity to tell the truth or to lie. The court denied defendants' request, relying on *Asato v. Furtado*, 52 Haw. 284, 474 P.2d 288 (1970).

*Asato* held that HRS § 621-22, which allows impeachment of a witness by proof of conviction of a felony or misdemeanor involving moral turpitude, must be read in the light of basic and fundamental

---

[5] While we find the evidence sufficient in these circumstances, we are nonetheless constrained to point out that the very existence of the issue was unnecessary in view of the ease with which the prosecutor could have adduced further proof. The prosecutor had only to ask Canape to describe the length of the barrel of each weapon. Canape could have done so orally or by using his hands. While this may have made the proof stronger, the failure of the prosecutor does not detract from the sufficiency of the evidence as adduced.

principles of evidence law. The most basic of these principles is that all evidence, to be admissible, must be relevant to the issue on which it is offered, i.e., credibility. *Id.* at 294, 474 P.2d at 295. The court established the rule that prior convictions must rationally carry probative value on the issue of the truth and veracity of the witness. Convictions that involve dishonesty or false statement, such as perjury, are relevant to that issue. *Id.* at 293, 474 P.2d at 295.

In *State v. Santiago*, 53 Haw. 254, 492 P.2d 657 (1971) our supreme court, in dealing with impeachment of a defendant by proof of prior conviction, stated:

> It is apparent, however, that prior convictions are of little real assistance to the jury in its determination of whether . . . the defendant may be believed. . . . Furthermore, since the jury is presumably qualified to determine whether or not a witness is lying from his demeanor and his reaction to probing cross-examination, there would appear to be little need for evidence of prior convictions even if the crime involves false statements.

*Id.* at 259-260, 492 P.2d at 661.

The scope and extent of cross-examination on collateral matters bearing on credibility is within the sound discretion of the trial judge. *State v. Pokini*, 57 Haw. 17, 548 P.2d 1397 (1976). On appeal the exercise of that discretion by the court below will not be disturbed absent a clear showing of abuse. The burden is upon the appellant to make that showing. To constitute abuse, it must appear that the trial court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant. *State v. Faulkner*, 1 Haw. App. at 654, 624 P.2d at 943.

In this case, we find there was no abuse of discretion. The trial court was careful to point out that the ruling was based on *Asato* and there was no relevancy between Canape's juvenile adjudications and the issue of his veracity. The reasoning of *Asato* and *Santiago* are clearly applicable in this case, notwithstanding any motivation on Canape's part to lie to save himself. In reality, the latter would seem to be the more relevant consideration for impeachment purposes.

Defendants contend, however, that the action of the trial court was destructive of their right to confrontation under the United States and state constitutions. Even if the court erred, a careful review of the record in this case convinces us beyond a reasonable

doubt that defendants suffered no detriment. Defendants were allowed extensive cross-examination on Canape's penchant for lying, especially to police officers, as well as his motive for lying, arising from his plea agreement with the prosecutor. Nevertheless, the jury returned a guilty verdict. We can see no reasonable possibility that the evidence of the Family Court's adjudications would have changed the jury's determination and hold the error, if any, was harmless. *Cf. State v. Pulawa,* 62 Haw. 209, 614 P.2d 373 (1980); *State v. Huihui,* 62 Haw. 142, 612 P.2d 115 (1980).

3.

Canape testified that, through his attorney, he offered to be a State witness because he did not shoot Bender. He had reached an agreement with the State that if he testified and told the truth, he would not be charged with murder but with a lesser offense.

On re-cross-examination by Emmsley's counsel, Canape was questioned as follows:

Q. (By Mr. Okimoto) You had your last paycheck, you said?

A. Right.

Q. How much was that paycheck?

MR. KANESHIRO: Objection, your Honor. It is beyond the scope of redirect.

THE COURT: Sustained.

MR. OKIMOTO: No, your Honor. It goes to Mr. Perkins' questioning. We have different interests, your Honor.

THE COURT: I will sustain it.

(Transcript at 276.)

\* \* \* \* \*

BY MR. OKIMOTO:

Q. Did the State ever tell you, Mr. Canape, if you did not testify truthfully what would happen?

A. Yeah, I would get charged for murder.

Q. What was that?

A. I would get charged for murder.

Q. Who determines what is truthful and what is not truthful?

MR. KANESHIRO: Objection, your Honor.

THE COURT: Sustained.

Q. (By Mr. Okimoto) Isn't it a fact that if Mr. Kaneshiro determines that you're testifying untruthfully that you would be charged for murder?

MR. KANESHIRO: Objection, your Honor.

THE COURT: It is sustained.

(Transcript at 272.)

Emmsley contends that those rulings likewise deprived him of his right of confrontation.

Again, our review of the evidence convinces us that the trial court did not abuse its discretion and that Emmsley has suffered no prejudice. *See* discussion of trial court's discretion regarding cross-examination above. Concerning the questions regarding Canape's paycheck, the prior testimony on cross-examination by Na'o had no relation to any remuneration Canape may have received from the State. Na'o's attorney was attempting to show that Canape was the actual culprit; that someone in Waianae had given Canape the money to rent the automobile and to kill Bender. Moreover, the record clearly shows that the plea agreement between the State and Canape said nothing about any remuneration for Canape's testimony.[6] The questions concerning who determines the truthfulness of Canape's testimony were also properly disallowed by the court. This was re-cross-examination and the terms of the plea agreement had been exhaustively explored by both defense counsel. *State v. Faulkner, supra; State v. Altergott,* 57 Haw. 492, 559 P.2d 728 (1977).

4.

Before trial, Na'o filed a Motion For Identity of Police Informant. The motion sought the name of an informant who was known to the police and had given Branco information that on the night of the murder the informant had seen Canape, Emmsley, Bender and a person named Darrell enter Canape's vehicle. Na'o contended that the evidence was exculpatory and he should be allowed to find the informant and call him as a witness.

---

[6] Canape's lawyer, Pamela Berman, was in court during his testimony. At the close of his testimony, Canape pleaded guilty to the offense of Hindering Prosecution. The agreement between the State and Canape was made a part of the record below and is a part of the record on appeal.

At the pre-trial hearing, the court initially granted the motion and Branco was asked by the court to state the informant's name. Branco stated the informant was fearful for his life and refused, even when ordered by the court to do so under penalty of contempt. The prosecutor then offered not to interpose a hearsay objection if Naʻo called Branco to testify regarding the information he had received. Naʻo insisted that the informant's testimony would be more effective than Branco's testimony and stood on his motion. The court then denied the motion on condition that the prosecutor not interpose a hearsay objection.

Branco was called by Naʻo as a witness at trial and testified that his informant told him that Bender got into the car with three males, that Naʻo was not one of those males, and that one of the males was Darrell. On cross-examination by the prosecutor, Branco stated that the informant was not considered reliable, knew both defendants, was a friend of Naʻo and frequented the same places as Naʻo. The informant did not tell Branco what time of day or where the three males entered the car with Bender.

Rule 16(e)(5)(ii) of the Hawaii Rules of Penal Procedure (1977) limits disclosure of an informant's identity and states:

ii) *Informants.* Disclosure of an informant's identity shall *not be required* where his identity is a prosecution secret and a failure to disclose will not infringe the constitutional rights of the defendant. Disclosure shall not be denied hereunder of the identity of a witness intended to be produced at a hearing or trial. [Emphasis added.]

In *State v. Texeira,* 50 Haw. 138, 433 P.2d 593 (1967), our supreme court held that it was not error for the trial court to deny a motion for disclosure of an informant's name where defendant was seeking to attack probable cause for arrest. The court held that the rule against disclosure of an informant's name is well-established and is necessary to protect those who provide information to the police. *Id.* 50 Haw. at 145, 433 P.2d at 599.

In *State v. Davenport,* 55 Haw. 90, 516 P.2d 65 (1973), our supreme court again upheld a denial of such a motion by the trial court where defendant sought the information in order to determine whether the police had probable cause to search his residence. Citing *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the court held that "no fixed rule with respect to disclosure is

justifiable," and, "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Davenport,* 55 Haw. at 102, 516 P.2d at 73.

Application of the balancing standard to the facts of this case convinces us that the trial court did not err in denying Naʻo's motion. We note, first of all, that the trial court did allow Naʻo to adduce the substance of the information through Branco, so the jury had the information before it, although not directly from the informant. While the crimes charged were serious, there was no showing that the information would establish any claimed defense, such as alibi, but only that it would contradict Canape's testimony. *Cf. State v. Altergott,* 57 Haw. 492, 559 P.2d 728 (1977).

There being no reversible error, the judgment is affirmed.

*Leslie S. Fukumoto (Blake T. Okimoto* with him on the briefs; *Pyun, Kim & Okimoto* of counsel) for defendant-appellant William Emil Emmsley.

*Richard K. Perkins (Yuen* and *Perkins* of counsel) for defendant-appellant Rudolph P. Naʻo, Jr.

*Lila LeDuc,* Deputy Prosecuting Attorney, City & County of Honolulu, for plaintiff-appellee.